CASSERLY *v.* CASSERLY.

1. Appeals from Probate Court — Sufficiency of Notice — Issue.

An objection that the notice of appeal from an order of the probate court settling an administrator's account, which stated as the reason for the appeal that he was indebted to the estate for more than the amount found due, was too general to permit of evidence being offered to charge the administrator with items not mentioned in the account as filed, is without merit, when made for the first time at the trial; the administrator not having applied for the framing of an issue under 1 Comp. Laws 1897, § 673, nor moved to dismiss the appeal.

2. Same — Administrator's Account — Findings of Jury. .

Although, upon appeal from an order settling an administrator's account, the jury, properly, should pass on each separate item, where no such suggestion was made by the parties, and it is not apparent that any injustice was done by taking the verdict in a general manner, it will not be reversed for the error in practice.

3. Same — Witnesses — Credibility — Impeaching Circumstances.

A jury, in passing upon an administrator's final account, is not bound to accept as conclusive his statement that certain moneys were given to him by decedent, especially when it appears that he made no such claim upon the hearing in the probate court.

4. Gift — Delivery — Intention — Instructions.

Where an administrator claimed that his decedent had delivered certain bank books to him, with words implying that she gave him the deposits certified therein, an instruction that the intent to make a gift must be manifested in some well-

understood manner, as by delivery of the books with words indicative of an intent to pass the title at once, was not erroneous, in that it did not include a gift by delivery subsequent to the expression of the intention, there being no evidence of any subsequent delivery of the gift in question.

5. SAME—EVIDENCE.

Testimony of an administrator that he did not charge himself with certain money, which he found secreted in decedent's house, because it belonged to him, standing alone, does not rise to the dignity of evidence showing a valid gift, and it appearing conclusively that, in the absence of any gift, the money belonged to decedent, it was proper for the court to direct the jury to charge him with the amount.

Error to Wayne; Hosmer, J. Submitted October 25, 1899. Decided February 20, 1900.

Patrick Casserly filed his final account as administrator of the estate of Margaret Green, deceased. From an order of the probate court charging the administrator with a certain sum, the administrator and James and Peter Casserly, heirs of decedent, appealed to the circuit court, where a larger sum was found due the estate. The administrator brings error. Affirmed.

*Bacon & Palmer* and *T. E. Tarsney*, for appellant.

*C. J. O'Flynn*, for appellees.

MONTGOMERY,. C. J. Andrew C. Green, a resident of Detroit, went to Woonsocket, R. I., his birthplace, in the spring of 1895, in an invalid condition, in search of health. He died there in October of that year. His brother-in-law, Patrick Casserly, a resident of Detroit, was with him in his last illness. He had no children or other heirs, except his wife, Margaret Green, the sister of Patrick Casserly. Margaret was a miser, and had money concealed in various places in her house, in which she led a solitary and secluded life. In addition to Patrick, she had a brother Peter and a brother James. Peter lived in the city of New York, but James had not been heard from

for many years. She corresponded now and then with Peter's family, and sent for Gertrude, one of his daughters, to stay with her after her husband went to Woonsocket. She remained with her about six weeks, and then returned to New York. While with Green at Woonsocket, Patrick secured from him a memorandum book stating the places in his house in Detroit where Margaret's concealed money was to be found. Upon Green's death, Patrick was appointed administrator of his estate by the probate court of Wayne county. After Green went to Woonsocket, and during the settlement of his estate, Patrick visited Margaret almost daily, in looking after her wants, as she was unable to leave her home, being crippled with rheumatism. Previous to Green's' departure for Woonsocket, there was no special intimacy between Patrick and Margaret.

On July 28, 1896, the probate court allowed the final account of Patrick, as administrator of Green's estate, with a balance against him of $15,679.37, which the court on the same day assigned to Margaret, as the widow and only heir of the deceased. On July 29, 1896, Patrick took this balance to Margaret in the form of three certificates of deposit issued by the three banks in which he kept Green's money while administrator of his estate. Patrick claims that, when he offered her these certificates, she declined to take them, and directed him to get bank passbooks in their place, as the certificates could be lost more easily than the books. He also claims that, when she directed him to get the books, she used language implying that the books would be his. He also claims that, when he got the books and handed them to her, she gave them back to him, using words implying that she gave them to him then and there. The appellees claim that the language used, in connection with the other facts in the case, shows that Margaret's language merely meant that she gave the books to Patrick to keep them for her, and that, while she intended to give the books to him at some time in the future, she never carried out her intention, and con-

sequently that the gift had never been completed. On July 30, 1896, Patrick filed in the probate court a paper dated July 29, 1896, purporting to be a receipt from Margaret for the balance found against him by the probate court.

Margaret died November 9, 1896, about 1 o'clock in the afternoon. About 11 in the morning, Patrick came to her home, and, going into the room where she was dying, ascertained from one of the nurses that the probability was that she would die before the day was over. He thereupon took off his coat, and went into the barn, from which he returned with a chisel in one hand and a hammer in the other. Going through the room in which Margaret was dying, he went into an adjoining room, where he opened a trap-door in the floor, from which he took a large crock containing a large amount of money. Emptying the crock into a large gripsack, he took it to the cars, with the assistance of one of the nurses. He returned to Margaret's home about 2 o'clock in the afternoon, and found that she was dead. On another occasion, previous to Margaret's death, he took an old coffee-pot out of the parlor chimney, which contained a large amount of gold. On another occasion, previous to her death, he took some money out of a cupboard. He was appointed the administrator of her estate, and his final account, claiming as due him a balance of $348.76, was passed upon by the probate court, which found a balance against him of $17,087.36. In his account the only money he charged himself with was $65, collected from rent. He claimed in the circuit court that Margaret had given him all of this coin, as well as the money which she inherited from her husband, and therefore he did not charge himself with it. The contention of the appellees was that he should be charged with the amount of the coin and the money inherited by Margaret, together with interest, and he was so charged by the jury.

The record contains a large number of assignments of error, all of which have been considered, but we will dis-

cuss in this opinion only such as we deem controlling. Some questions of practice are raised, which we will first consider. In the notice of appeal of James Casserly, the reason for appeal is stated to be that said administrator is indebted to said estate in a larger amount than is called for by the balance found due by said order. When the testimony was offered on the trial, it was urged that no testimony could be offered to charge the administrator with items not mentioned in his account as filed. Section 671, 1 Comp. Laws 1897, provides: "The appellant shall give notice of such appeal to the adverse party, with his reasons therefor, in such manner as the probate court shall direct." It is contended that the reasons assigned were too general to admit of any proof on the trial of the appeal of items not set out in the account. Either party might have applied to the court for the framing of an issue, under section 673 of the Compiled Laws, and, having failed to move to dismiss the appeal, we think the objection on the hearing was without merit.

It is further urged that there was error in the practice, in that a general verdict of the jury was taken, the items not being particularly specified. Good practice requires that the jury should pass on each separate item of an administrator's account. *Loomis* v. *Armstrong*, 49 Mich. 521 (14 N. W. 505). But no such suggestion was made on the trial by either counsel. On the contrary, during the charge a reference was made to the question of costs, and it was suggested that the question was properly a question for the court, but neither party suggested that the items of the account of charges against the administrator should be passed upon separately by the jury. Unless we can see, therefore, that some injustice has been done in taking the verdict in this general manner, the appeal should not be reversed for the error in practice. *Duvernois* v. *Kaiser's Estate*, 75 Mich. 431 (42 N. W. 848)

The appellant requested the court to charge the jury, referring to the witnesses Patrick Casserly, Mrs. Kelly,

Mrs. Aldrich, Father Brancheau, and Mr. Willcox, if the statements made by these several witnesses were true, they clearly showed an intention on the part of Mrs. Green to give to her brother Patrick all of her personal property, and, if the jury found such statements to be true, their legal effect was to make a valid gift of the money to Patrick. The court refused to give this request, and, we think, very properly. The testimony of these witnesses did not conclusively show that there was an intention to make a present gift of the property, although the testimony did go far to show that Mrs. Green intended that Patrick should have her property after her death. But, aside from this, there was testimony strongly tending to show that, while Patrick was a witness before the probate court on the hearing on this account, he did not make the claim that the money had been given to him by his sister, which omission was a significant fact, which the jury had a right to consider, in connection with the testimony of the witnesses on this trial. The testimony cannot be said to be uncontradicted, and the court, therefore, very properly refused to withdraw the question from the jury. The same consideration answers the assignments of error based upon the refusal of the court to charge the jury that they had no right to disregard the testimony of Mr. Casserly relative to his transactions with Mrs. Green, and the making of the gift of the money by Mrs. Green to him.

Error is assigned upon the charge of the court that a gift requires, first, an intent to transfer title presently, that is, at the moment, to the deposits named in the bank passbooks; that the intent must be manifested by some usual and well-understood manner, as by the delivery of the passbooks, with words indicative of an intent to pass the title at once. It is said that from this charge the jury must have inferred that the words showing an intention to make a gift must be accompanied by a delivery of the passbooks, and that this is not the law. What was intended by the circuit judge was to state the rule that, to constitute a valid gift, the circumstances must show that a

123 MICH.—4.

present gift is intended, as distinguished from a promise to change title in the future. Undoubtedly, the delivery might have been made subsequently to the use of the words showing a gift, but in the present case there was no evidence showing, or tending to show, either a promise or subsequent delivery. The question bears on the intent manifested on the single occasion when the books were returned to Mrs. Green, and, as is claimed, by her handed back to Patrick Casserly. The instruction could not have been misunderstood by the jury, and, as applied to the facts, correctly stated the law, particularly when read in connection with a portion of the charge in which it was stated: "If Mrs. Green intended to give her. money to her brother Patrick, and she gave him the bank books with the intention 'that the money in the bank books represented thereby should be his money, that was all that was necessary to transfer the ownership to him."

As to the money found in the crock, the judge charged the jury that the administrator should be charged with the amount, inasmuch as that could not be the subject of any gift. Evidently, what was meant by this was that the evidence failed to show any gift of this money. We have examined the record with care, and do not find any injustice was done by this instruction. True, Mr. Casserly stated that he did not charge himself with the money in the crock, because it belonged to him, but there is no evidence which we have been able to discover which shows a gift of this distinct money. Counsel cite the evidence of a gift of $1,000, but this related to money found in the chimney, and the court charged the jury as to that, if Mr. Casserly's claim that the money was given to him was true, that should be an end of the matter. The statement of Mr. Casserly as to the money in the crock was merely a conclusion, and did not rise to the dignity of testimony tending to show the requisites of a valid gift. ·

On the whole record, we think no injustice has been done to this administrator. The record shows that he has not been frank or careful in the administration of this

trust, and, while there may have been a vague purpose in the mind of Mrs. Green to make him her heir, we feel convinced, on this record, that such purpose was never carried into effect, and that Patrick took advantage of the opportunity to take the money into his possession, and failed to account to the probate court.   The verdict of the jury was, to our mind, eminently just, and the judgment will be affirmed.

The other Justices concurred.