## MANEY v. CASSERLY.

1. EQUITY JURISDICTION—PROBATE COURTS—ESTATES OF DECEDENTS—FRAUDULENT DISTRIBUTION.

Where the widow and administrator of an intestate have fraudulently secured orders and decrees of the probate court distributing the estate to persons who are not heirs, to the exclusion of the true heirs, which orders and decrees the probate court cannot correct, equity has jurisdiction to compel an accounting, and a distribution to the ones entitled thereto. *Smith* v. *Boyd*, 127 Mich. 417.

2. SAME—CLAIMS—CLOSING OF ESTATE.

Where, in such case, the widow, who had profited by such fraud, had died, and her estate had been administered to the point of finding a final balance, and an order of distribution made which could not be appealed from nor opened by the probate court, it was not necessary to proceed against the widow's estate before filing a bill in equity to reach the share of the heirs.

3. SAME—LACHES.

Where, through fraud practiced upon the courts and the complainants, orders have been secured to distribute an estate to others than the heirs, and the fund still remains intact, equitable relief will not be denied on the ground that complainants were guilty of laches in not discovering the death of the intestate earlier.

4. ESTATES OF DECEDENTS—DISTRIBUTION—RENTS.

Heirs, whose existence was fraudulently concealed from the probate court by the administrator and widow of the intestate, were *held* to be entitled to their proportionate share of the rental value of the real estate while their rights were

denied, with interest for the average time at 6 per cent., less the value of the necessary repairs.

5. SAME—WIDOW'S ALLOWANCE.

    Under 3 Comp. Laws, § 9322, subd. 2, a widow is not entitled to a further allowance for her maintenance after her portion of the estate has been assigned to her.

6. SAME—LITIGATION—COSTS.

    Where certain heirs have secured for the estate funds which were fraudulently concealed by the administrator, other heirs, who share in the benefits of the litigation, should contribute to the expense.

Appeal from Wayne; Brooke, J. Submitted January 6, 1903. (Docket No. 2.) Decided September 15, 1903.

Bill by Ellen Maney, George A. Green, and Howard S. Dean against Patrick Casserly, administrator of the estates of Andrew C. Green, deceased, and of Margaret Green, deceased, Patrick Casserly, Peter Casserly, and James Casserly, for an accounting. From the decree rendered, complainants and defendant Patrick Casserly appeal. Modified.

*Elisha A. Fraser* (*Jasper C. Gates* and *Sidney T. Miller*, of counsel), for complainants.

*Bacon & Yerkes* (*Fred H. Aldrich* and *Tarsney & Fitzpatrick*, of counsel), for defendant Patrick Casserly.

*Cornelius J. O'Flynn*, for defendant Peter Casserly.

HOOKER, C. J. Andrew C. Green died intestate on October 3, 1895. His heirs at law consisted of his widow, Margaret Green, and the complainants, who were his nephews and a niece. On petition of the widow, her brother, defendant Patrick Casserly, was appointed administrator. On July 3, 1896, Patrick Casserly filed a petition praying that the residue of the estate be assigned to said Margaret Green, representing in said petition that she was entitled to it as widow and only heir of Andrew C. Green, and that said Andrew C. Green left him surviv-

ing no lineal descendants, nor father, mother, brother, sister, nor issue of any brother or sister. Upon a hearing in probate court, such an order was made, and the administrator was subsequently discharged from his trust.

Margaret Green died November 9, 1896. Upon his own petition, Patrick Casserly was appointed administrator of her estate. His inventory stated that her only property consisted of two city lots, and on September 10, 1897, he filed his final account, showing a balance of $348.76 due him as administrator from her estate.

Defendants Peter and James Casserly, brothers of Patrick, were nonresidents of Michigan. They claim to have known nothing of the settlement of the estate of Andrew C. Green, but were informed by letter from Patrick of the death of Margaret about the time that it occurred. They were then or afterwards informed by Patrick that she left little, if any, estate. Upon coming to Detroit, they learned that Patrick's final account as administrator of her estate was about to be passed upon, and they entered upon a contest in relation thereto. It was claimed by them that Patrick had failed to charge himself with all of the property belonging to Margaret, and that he had found and taken into his possession, and not accounted for, large sums concealed about the house and under the floor, and also a sum hidden in a feather bed. No distinction was made between moneys belonging to Margaret and Andrew, for she had been adjudicated his sole heir, and his property was supposed to have been all turned over to her in obedience to the order of the probate court. If the Casserlys, or any of them, knew that this claim was a fraud,—as we have no doubt one or more of them did,—it was not to their interest to divulge the fact, and the case was disposed of upon the assumption that Andrew died leaving no kin, and that all left by him descended to his widow. Upon the hearing in probate court, Patrick was found to owe the estate of Margaret $17,087.36. Appeals were taken to the circuit court by all of the Casserlys, where the amount was increased to $23,774.72, and the estate was

assigned to the three Casserlys in equal shares. This decision was affirmed by this court. See *Casserly* v. *Casserly*, 123 Mich. 44 (81 N. W. 930). The complainants were not parties to that litigation.

After the decision in the circuit court, Peter and James Casserly began attachment proceedings against Patrick to recover their respective shares, and a levy was made upon some of his property; but, before sale, the bill in this cause was filed, asking a receiver, and the property was tied up by injunction. Ultimately, however, Patrick was allowed to pay into court a sum equaling five-sixths of the amount found in the administrator's hands, where it has since remained, in the custody of the register, drawing 3 per cent. interest.

It is stated in the briefs, and not denied, so far as we have been able to discover, that in the probate proceedings before the circuit court the court instructed the jury to charge Patrick with money found in the chimney and under the floor, but that the evidence was insufficient to establish the claim for money concealed in the bed. It is claimed also that an item of $65 for rent of real property, with interest, was included.

The bill of complaint in this cause was filed December 12, 1898, by the complainants, as the children of William C. H. Green, deceased, the only brother of Andrew C. Green, claiming one-half of Andrew C. Green's estate. They charge fraud upon the part of Patrick Casserly and Margaret Green in procuring the order assigning the residue of Andrew's estate to her, and ask that such order be vacated. They allege that a large sum of money belonging to Andrew C. Green came to the hands of Patrick, and was not accounted for to the probate court, and ask an accounting. Peter and James were joined as interested parties. The decree adjudged that the complainants are heirs of Andrew C. Green, deceased, and entitled to one-half of his estate, real and personal. The amount of personal property belonging to them was found and determined as follows, viz.:

| | | |
|---|---:|---:|
| One-half of the balance found due the estate of Andrew, according to the final account | $7,339 | 69 |
| One-half amount found in house, and appropriated by Patrick Casserly | 2,959 | 27 |
| Interest on same at 3 per cent. | 1,004 | 13 |
| Total | $11,303 | 09 |
| Also from Patrick Casserly one-half of money found in feather bed | 2,525 | 00 |
| Interest on same | 492 | 38 |
| Aggregate | $14,320 | 47 |

The decree made an allowance against the complainants of $750 to Peter Casserly by way of compensation in securing an allowance of said sum of $5,918.54 against Patrick in the probate case. It also determined the amounts due to Peter and James, each of whom received one-half of the remainder of the money in the hands of the register. Interest was computed at 3 per cent. from the date of filing the bill. The foregoing is not a complete statement of the entire decree, but is sufficient for the present purpose.

The complainants question this decree in the following particulars:

(1) Of money in court, it is claimed that they should receive $13,148.34.

(2) Against Patrick Casserly, they claim one-half of the money found in the bed, and 6 per cent. interest, $5,565.23; one-half of $1,389.55, improperly allowed the administrator upon his account in probate court, with interest, $960.65.

(3) One-half of the rental of the real estate, alleged to amount, with interest, to $1,206.51.

(4) They question the propriety of requiring them to pay Peter Casserly $750 towards the expense of his litigation with Patrick.

The case presents the following questions:

(1) Whether the complainants are heirs at law of Andrew C. Green.

(2) Whether they have commenced the proper proceeding for relief.

(3) Whether they have been guilty of such laches as to preclude relief.

(4) The amount for which Patrick and the estate of Margaret should be held accountable to them, if anything.

(5) How much, if anything, should be allowed from the fund deposited ?

(6) Whether complainants should be required to contribute to the expense incurred by Peter in the litigation between the Casserlys.

1. Are the complainants heirs of Andrew C. Green? Although this may have been vigorously denied and disputed for a time, it admits of no doubt. It is conclusively proved, and is now conceded.

2. Are the complainants in the proper forum, and is the proceeding a proper one? Counsel for defendant Patrick Casserly say: (*a*) That equity is not the proper forum; (*b*) that complainants thould have first proceeded against the estate of Margaret.

The bill in this cause can be sustained upon the ground that the case involves fraud. It is difficult to avoid the conclusion that Margaret, if informed of the truth, participated in the fraud of Patrick. We say "the fraud of Patrick" advisedly, for, although counsel say that it is not proven that he knew of the existence of these heirs, it is not probable that he was ignorant of the fact that Andrew C. Green had a brother, which fact Margaret would naturally know. We find no satisfactory evidence of any attempt to reach him or his heirs, though there are large charges for expenses at Woonsocket. But if we would otherwise entertain any doubt of the fraudulent concealment of the death of Andrew from his heirs, the conduct of Patrick in denying that there was anything in the estate of Margaret, his failure to account for money found upon the premises, and the conversion of it to his own use, in connection with his attempt to cheat his own brothers out of their shares, stamp the entire transaction, so far as he is concerned, as fraudulent. We have no doubt that equity has jurisdiction in such cases. Rights have accrued under the orders of the respective courts, in

the probate proceedings, which can only be devested by a proceeding like this. *Smith* v. *Boyd*, 127 Mich. 417 (86 N. W. 953). Through fraud on the part of Patrick, and mistake, if not fraud, on the part of the other Casserlys, Andrew's estate has finally been ordered distributed to persons who are not his heirs, to the exclusion of the true heirs. Those courts cannot correct their decrees and orders, and equity is the only tribunal that can bring all of the parties together, and put an end to the matter, by doing full and complete justice to all concerned.

We see no occasion for any proceedings in probate court as a preliminary to this bill. The estate of Andrew is closed, and the property was turned over to Margaret, and has come to the possession of her administrator, and the administrator of Andrew has been discharged. Margaret has died, and her estate has been administered to the point of finding a final balance in the hands of her administrator, and ordering it distributed; such final order having been affirmed by this court in ignorance of the true heirs of Andrew and their rights. Now it transpires that of this fund a large portion was never the property of Margaret, although disposed of by an order which the probate court cannot open, while Patrick is found to have a large sum belonging to Andrew C. Green, for which he never accounted to either estate. There is no adequate remedy in the probate court. The contention that the complainants should file a claim against Margaret's estate for this money—especially that found in the feather bed, which was converted by Patrick, and never became a part of Margaret's estate—does not impress us as just. We see no reason for asking the heirs of Margaret to make good the embezzlements of Patrick simply because he chances to be the administrator of Margaret's estate; and while, as to the other moneys which have become a part of her estate, it may be that, had a claim been seasonably filed, relief might have been had in that way (which we do not decide), it was presumably too late to present claims when this suit was begun, and we have

no doubt of the jurisdiction of equity, in view of the attendant circumstances of the transaction.

3. Should the complainants be denied relief upon the ground of laches ?   Counsel for Peter Casserly strenuously urges this point.   We have examined it, and the evidence said to show culpable negligence on the part of the complainants in not discovering Andrew's death earlier, and feel that it would be unjust to apply such a rule.   It is plain that Margaret's estate includes a large part of complainants' share of their uncle's estate.   There is no equitable reason for giving it to the Casserlys.   It has not been paid over to them, and, so far as appears, is intact, and within reach of the court.   Beyond this, Patrick has a large sum that he has never accounted for, if there is any truth in the story about the money found in the feather bed.   Why he should not justly account for this in this or some other proceeding does not satisfactorily appear.   We think he should.   We appreciate the contention that equity should not be used as an appellate court to review probate and other proceedings, especially proceedings at law; and not only is such appellate jurisdiction not entertained in this case, but the jurisdiction of equity is ample in this case because of the fraud which has been practiced in and upon such courts and these complainants, which is a proper subject for equitable cognizance.   In this connection we may add that the statute providing for appeals from probate courts has no application.   This is not an appeal. There is, therefore, no force in the claim that the suit is barred by a statute of limitation.

4. How much should Patrick and the estate of Margaret be held accountable for to the complainants ?   The discussion of this question may call for allusion to some additional facts not hitherto stated.

(*a*) *The Real Estate.*   There can be no doubt that the complainants are entitled to an undivided half interest in the real estate of Andrew C. Green, as the trial court held. Upon the death of Andrew it descended to Margaret and the complainants in moieties.   They became tenants in

common, and there is perhaps nothing that would justify us in saying that Margaret ousted them, or denied them their rights therein; and we do not discover anything that shows that her estate received the rents and profits; and we fail to find that complainants make a claim for rent accrued, though they do claim one-half of the rental value while their rights were denied by defendants. We think that they are entitled to this from the time that their bill was filed, viz., December 12, 1898, to the date of this decree. The rental value was shown to be $28 per month, one-half of which is $14, and the computation should be made upon that basis. This would amount to $770. Interest should be allowed for the average time at 6 per cent., which amounts to $101.70, and from the aggregate —$871.70—should be deducted the sum of $50, which we estimate to be the value of necessary repairs, leaving a total of $821.70 for this item.

(b) *The Account in the Andrew C. Green Estate.* The final account in the Andrew C. Green estate, as allowed, shows $15,679.37 paid over to Margaret Green. Of this, $1,000 should be deducted as and for her allowance. It is claimed that a further sum of $300 should be deducted for allowance, but we think 3 Comp. Laws, § 9322, subd. 2, is a sufficient answer to this claim. Deducting this $1,000 leaves the total amount received by Margaret as heir and distributee $14,679.37, one-half of which, $7,339.69, rightfully belonged to the complainants. This sum is a rightful charge upon the estate in the hands of her administrator.

(c) The next item consists of various sums of money found by Patrick about the house, under the floor, etc., exclusive of money alleged to have been found in the feather bed. This subject was litigated between the Casserlys, and was included in the amount found to be due to Margaret's estate from Patrick, the administrator, forming a part of the verdict for $23,774.72 as a balance due the estate, and which was ordered distributed among the Casserlys. The learned circuit judge who heard the

cause found this sum to have been $5,918.54, and we think the testimony in this cause supports that finding. One-half of this sum justly belonged to the complainants. Margaret never received this. It was concealed and withheld by Patrick, but it was brought into her estate by the proceedings affirmed by this court, together with the interest at 6 per cent., and was included with such interest in the fund brought into court.

(*d*) Upon the hearing of the final account in the estate of Margaret, her heirs also insisted that Patrick, the administrator, should be charged with a sum of money found in a feather bed, alleged to have been $8,000. They were not successful in establishing that claim, and the judge took the question from the jury upon the ground of an absence of proof. That decision does not preclude the complainants from trying the question here. The trial court included in his decree in favor of the complainants the sum of $3,017.38 for such money, including 6 per cent. interest from the date of filing the bill. We think that the complainants are entitled to one-half of the full sum of $8,000. The interest question will be considered later.

(*e*) In the estate of Andrew, the sum of $1,389.55 was allowed the administrator. The court in this cause was asked to review this, and disallow the item, but refused to do so. While the conduct of Patrick arouses suspicion that some of these items are excessive, if not fraudulent, it is not very clearly shown. The order will not be disturbed in this respect.

### *Recapitulation.*

We find complainants entitled to the following:

(1) One-half of the real estate.

(2) One-half of the personal estate of Andrew, as follows:

| | | |
|---|---|---:|
| (a) | Rent | $821 70 |
| (b) | Money reported Andrew's estate | 7,339 69 |
| (c) | House and suppressed | 2,959 27 |
| (d) | Feather-bed money | 4,000 00 |
| | | $15,120 66 |

5. How much should be allowed from the fund deposited? It is apparent that some of these items should be paid from the estate of Margaret, represented by the deposit with the register, while at least one should be a charge against Patrick only. The items $7,339.69 and $2,959.27 were included in the verdict, with interest at 6 per cent. to the date of the verdict, and an amount sufficient to cover them, with such interest to the date of deposit, is in the hands of the clerk. The rent of the real estate is a charge against Patrick, Peter, and James, because they have withheld the premises from complainants, and denied their right, during this litigation, and two-thirds of the amount may properly be charged against them and the fund belonging to them. On the other hand, the feather-bed money never found its way into the assets of Margaret's estate, and is not included in the deposit. It should not be a charge against the estate of Margaret, or against Peter or James, but should be a charge against Patrick.

6. *Interest.* Interest on the first two items is computed to the date of the deposit at 6 per cent. It amounts to $13,148.34, and is a charge upon the fund in court. From that date it shares in the earnings of the fund. The rent money, having been withheld by the three Casserlys, is chargeable against them. Two-thirds of it, viz., $547.80, should be a charge upon Peter's and James' shares of said fund. The other one-third, $273.90, cannot be a charge against that fund, for the reason that one-sixth of the balance due the estate of Margaret—*i. e.,* Patrick's share—was not deposited. It is a charge against Patrick, however. The interest to July 28, 1903, is included. After that date it should draw interest at the legal rate to the date of decree, and rent at $14 per month should be added for the time intervening between that date and the date of decree. The first two items, with interest, being included in the deposit, which was made with the approval of the complainants, will draw their proportionate share of the earnings of the fund. The feather-bed item will

draw interest at 6 per cent. from October 3, 1895, the date of Andrew C. Green's death, to the date of the decree in this cause.

7. *The $750 Item.* The complainants complain of the provision of the decree whereby they are charged with a share of the expenses incurred by Peter in his litigation with Patrick in the matter of Margaret's estate, which, as we have seen, was a protracted matter, ending only when this court set it at rest. That litigation brought $5,918.54 into Margaret's estate, which the complainants share. It is true that it was not done in their interest, and that Peter and James have contested their claims to any share in such estate; but they have shared in the benefits derived from that litigation. The circuit judge was of the opinion that equity required complainants to contribute to such expense, and charged them with $750 thereof. We will not disturb his finding in that regard.

The defendants Peter and James are entitled to the remainder of the deposit after satisfying the claims of the complainants as allowed against it and them, one-half to each, less $600 to Peter and $100 to James, as provided by the decree in the circuit court. Each is entitled to an undivided sixth of the real estate. They are not entitled to a decree against Patrick for a share of the money found in the feather bed; that question being *res adjudicata* as to them.

A decree may be taken in accordance with the views herein expressed; the decree of the circuit court being affirmed in all particulars except as modified by this opinion. The complainants will recover costs.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. CARPENTER, J., did not sit.