BERDAN v. MILWAUKEE MUTUAL LIFE-INSURANCE CO.

1. LIFE INSURANCE—INSURABLE INTEREST.
   One who is dependent upon another for his support has an insurable interest in the latter's life.

2. SAME — APPLICATION — WARRANTY — MATERIAL FACTS — RELATIONSHIP OF BENEFICIARY.
   A statement in an application for insurance that the beneficiary was a nephew, when in fact he was no blood relation, but lived in the family of and was supported by the applicant, was not a misrepresentation of a material fact which would avoid the policy issued by a company (organized in Wisconsin) having a right by statute and its charter to insure a member for the benefit of any one having an insurable interest, although the statements were warranted to be true.

3. SAME — GUARDIAN AND WARD — FRAUD IN SETTLEMENT OF WARD'S CLAIM.
   A petition for the appointment of a guardian for a minor alleged that the mother had abandoned the child nine years previously. In truth, the mother had not abandoned the child, but had arranged with the petitioner, his wife and sister-in-law, that they should care for the child as if it were their own. After the wife's death, the sister-in-law took care of and supported the child, and at her death left a life policy for $1,000, in which the child was named as beneficiary. After the petitioner's appointment as guardian, he settled

with the insurance company for $300, and nine days later
notified the superintendent of the poor that he could not take
care of the child. The mother protested against the appoint-
ment of the guardian as an unfit person. She also protested
against the settlement, and warned the company that the
guardian sought to get the insurance money for his own pur-
poses. The company ignored the protests. *Held,* that the
settlement would be set aside as fraudulent, though it had
been made under the authority of the probate court.

4. SAME—EQUITY JURISDICTION—REMEDY AT LAW.
   Equity has jurisdiction to set aside a fraudulent settlement of
   a minor's claim against an insurance company, made by his
   guardian under the direction of the probate court, as there is
   no adequate remedy at law.

Appeal from Bay; Shepard, J. Submitted November
20, 1903. (Docket No. 153.) Decided April 26, 1904.

Bill by Harold F. P. Berdan, by next friend, against
the Milwaukee Mutual Life-Insurance Company and
Frank Berdan, to set aside a settlement of a claim under
a policy of insurance. From a decree for complainant,
defendant company appeals. Affirmed.

*Isaac A. Gilbert* ( *De Vere Hall,* of counsel ), for com-
plainant.

*Harris & Kendrick,* for appellant.

MOORE, C. J. The complainant in this case was named
as the beneficiary in a policy of insurance for $1,000 issued
by the defendant company. The defendant Berdan was
appointed as his guardian, and made a settlement with
the company for $300. This bill was filed for the purpose
of having the settlement set aside. A decree was entered
setting aside the settlement, and decreeing defendant
should account for the $300 obtained, and the defendant
company be required to pay the remaining $700 and inter-
est. The defendant company has appealed. The other
defendant did not appeal.

Three defenses are interposed: *First,* that the assured

made a false statement of a material fact in the application for insurance when she stated the beneficiary was her nephew, when he was not related to her; *second,* that the settlement was made in good faith, after the probate court had authorized it to be made; *third,* that complainant had an adequate remedy at law. We will take up these defenses in the order stated above.

The record discloses that complainant, who at the time of the trial was about 11 years old, is the illegitimate child of a domestic who was at the time of his birth in the employ of Mr. and Mrs. Berdan. Miss Rebecca M. Quick was the sister of Mrs. Berdan, and an inmate of her family at the time of the birth of the child, and was about 45 years of age. The two sisters became attached to the child, and named it Harold F. P. Berdan. The mother of the child a little later went to Battle Creek, and the child passed into the custody of Mr. K——. Various proceedings were had, which it is not necessary to state here. About the last of November, 1892, Miss Quick went to Battle Creek, and arranged with the mother of the child to keep him as a member of the Berdan family; Miss Quick to be considered as his aunt, and Mr. and Mrs. Berdan to be known as his father and mother. Miss Quick took the child back with her under this arrangement, and from then on he was an inmate of the Berdan family, and did not know until after her death that Miss Quick was not his aunt. After Mrs. Berdan's death, Miss Quick assumed charge of the Berdan household, and from her earnings paid all of the expenses thereof, except the rent, which was paid by Mr. Berdan. During this time the child was sent to school, and treated as a member of the family. In December, 1898, Miss Quick applied for insurance in the defendant company for $1,000, payable to Harold F. P. Berdan, nephew, and a policy was issued, payable to him. The premiums thereon were paid by Miss Quick. While on a visit at Gaines, having the child with her, Miss Quick died, on Memorial Day, 1900.

Under these circumstances, was the policy void? The

appellant answers this question in the affirmative, and bases the answer upon the following provisions contained in the application for and certificate of insurance:

"* * * To whom do you desire the money to be paid in case of death? State full name, and relationship to you, of beneficiaries, and how money shall be divided.— *Harold F. P. Berdan, nephew.* * * *

"I hereby warrant that the answers and statements in the foregoing and in Part II of the application are full, complete, and true, to the best of my knowledge and belief. I covenant and agree that any misstatements made herein * * * shall forfeit and annul, without any proceedings on the part of the association or notice therefrom, all rights * * * named in the policy or policies which may be hereafter issued to me. * * * "

"The Fraternal Alliance, by this policy of insurance, agrees to pay the sum of one thousand dollars * * * to Harold F. P. Berdan, the nephew of the insured.

"This contract is made in consideration of the payment of the premium hereby required, and the written and printed application and medical examination for this policy, and of the agreements, statements, and warranties thereof, which are hereby made a part of this contract."

—And upon section 1, law 28, of the code of laws of the Fraternal Alliance, which reads:

"The statements and answers in the application for insurance are warranties, and if they are in any respect untrue, or if there has been any concealment or false statements contained in any application for insurance, * * * the certificate shall be void."

Counsel say the statement in the application that the beneficiary was a nephew, when he was no blood relation, was a fraud upon the company, which vitiated the policy; citing *Ferris* v. *Assurance Co.*, 118 Mich. 485 (76 N. W. 1041); *Briesenmeister* v. *Supreme Lodge K. of P.*, 81 Mich. 525 (45 N. W. 977); *Malicki* v. *Guaranty Fund Life Soc.*, 119 Mich. 151 (77 N. W. 690); *Finch* v. *Modern Woodmen of America*, 113 Mich. 646 (71 N. W. 1104); *Mutual Benefit Ass'n* v. *Hoyt*, 46 Mich. 473 (9 N. W. 497); *Metropolitan Life-Ins. Co.* v. *O'Brien*, 92

Mich. 588 (52 N. W. 1012); and other cases. These cases, we think, can be easily distinguished from the one at bar, as will more fully appear later. Some of them are cases where the beneficiary named was not an heir or a relation of the assured, and whose interests were not promoted by the continued living of the assured. Of these cases the courts say they are of the nature of wager policies, and void as against public policy. Others of the cases are where false material representations were made bearing upon the desirability of the assured as a risk upon which to place insurance, which false representations might influence the company about accepting the hazard. In these cases the courts have said the company was entitled to the facts.

The defendant company is organized under the laws of Wisconsin, which have the following provisions:

"*Members' Rights as to Beneficiaries.* [Section 3, chap. 175, Laws 1895.] Any member of a society, order, or association organized in Wisconsin shall have the right to name as his beneficiary any person having an insurable interest in his life, or to make his insurance payable to his estate. Any such member shall also have the right to change the beneficiary named in his certificate of membership or policy without being required to obtain the consent of such beneficiary, by complying with the provisions of the by-laws of the corporation that issued such certificate or policy." Ins. Laws Wis. p. 140, § 215.

The laws of the order contain, among others, the following provisions:

## "OBJECTS OF THE ORDER.

\* \* \*

"*Third.* To provide a benefit fund from which, upon the death of any male member who has fully complied with all the requirements of the order, a sum of not to exceed $3,000, and upon the death of any female member who has fully complied with all the requirements of the order, a sum not to exceed $1,000, may be paid to such beneficiary or beneficiaries as may be designated by the member in accordance with the laws of the order.

"*Fourth.* Any member shall have the right to name as

his or her beneficiary any person having any insurable interest in his or her life, or to make the insurance payable to his or her estate, in conformity with the laws of the State of Wisconsin."

## "Benefit Certificate.

\* \* \*

"Sec. 2. Applicants shall enter upon their applications the name of such person or persons to whom they may desire the benefits paid: *Provided*, however, that any member desiring after-born children to participate as beneficiaries in his certificate may so designate them, subject to such future disposal of .the benefit as the member may thereafter direct, as permitted by the laws of the order; and the name of each beneficiary shall be entered upon the benefit certificate according to said directions."

It will be observed that, under both the laws of the State and of the order, any person having an insurable interest in the life of the assured may be named as beneficiary. It has long been recognized that one who is dependent upon another for his or her support may have an insurable interest in the life of the person upon whom he is so dependent. Niblack, Acc. Ins. & Ben. Soc. (2d Ed.) § 195; Bacon, Ben. Soc. & Life Ins. (1st Ed.) § 261.

In *Ballou* v. *Gile*, 50 Wis. 614 (7 N. W. 561), it was said:

"In determining who is entitled to receive the benefits of the provisions made by a society of this kind, it is the duty of the court to construe its rules and regulations liberally to effect the benevolent purposes of the order, and in no case so to construe them as to defeat such purpose, unless the meaning of such rules and regulations is so clear and certain as to admit of no other reasonable construction. This was the rule adopted by this court in *Schunck* v. *The G. W. & W. F.*, 44 Wis. 369, and in *Erdmann* v. *Insurance Co.*, Id. 376, and it must be adhered to in this case."

In *Renner* v. *Benevolent Soc.*, 89 Wis. 401 (62 N. W. 80), the assured named as his beneficiaries "my daughter and son-in-law, Josef and Josefa Votapek." Josefa Votapek was no blood relation to the assured, but was a

daughter of his wife by a prior husband.    In disposing of
the case, the court said:

" No doubt, the court should construe the charter, con-
stitution, rules, and regulations of the defendant liberally,
in order to promote the benevolent purposes of the order.
*Ballou* v. *Gile*, 50 Wis. 614 (7 N. W. 561).    This benev-
olent purpose is promoted by giving effect to the intention
of the member who pays the sums necessary to procure
the benefit, whenever that can properly be done.    It is
said that a leading purpose of the defendant's existence,
as expressed in its charter, is '.to assist and give pecuniary
aid to the widows and orphans of deceased members.'
There is no question that the persons named in the benefi-
ciary certificate are the identical persons whom the mem-
ber who paid the money wished to have the benefit.    If,
then, upon fair principles of interpretation, it appears that
those beneficiaries are fairly included in the class of per-
sons designated as ' orphans of the deceased,' then all
question of the correctness of the judgment of the trial
court disappears.    Now, it seems clear that if Josefa Vot-
apek was, in a legal sense, the child of John Renner in
his lifetime, then she was his ' orphan ' after his decease.
It is quite clear that, in a legal sense, she was his child
during his lifetime.    She was his wife's daughter, his
stepdaughter.    ' By marriage, one party thereto holds, by
affinity, the same relation to the kindred of the other that
the latter holds by consanguinity.'    *Spear* v. *Robinson*,
29 Me. 531; *Higbe* v. *Leonard*, 1 Denio, 186 ; *Simcoke* v.
*Grand Lodge A. O. U. W.*, 84 Iowa, 383 (51 N. W. 8,
15 L. R. A. 114).    In the beneficiary certificate she was
designated as 'my daughter Josefa.'    This was strictly
correct, for such was the legal relationship, by reason of
the affinity between them.    There is nothing in the de-
fendant's charter or constitution or rules which indicates
that the word ' orphans ' is used in any restrictive sense,
or that it was intended to exclude from its proposed bene-
fits any person who answered in legal sense to the desig-
nation of ' children ' or ' orphans ' of the deceased member.
It is not expressly limited to those related by consanguin-
ity, and cannot be so restricted by construction, in the
absence from the context of words indicating such a de-
sign.    So Josefa Votapek was eligible to be a beneficiary
of John Renner."

In *Story* v. *Benefit Ass'n*, 95 N. Y. 474, the assured

obtained a certificate designating his wife as beneficiary. It was claimed, inasmuch as the assured had a living wife, from whom he had not been divorced, when he went through the form of a marriage with the beneficiary, and could have but one wife, that the plaintiff was not entitled to the fund as the widow of, and the beneficiary named by, the deceased. In holding that she was entitled to the fund, the court used the following language:

"The object of the defendant's association, as described in the constitution, was to provide for the relief of widows, orphans, and heirs of deceased members. The by-laws declare that, within 60 days after the death of a member, the board of directors shall cause to be 'paid over to his widow, and, if no widow, then to his children or their legal custodian, and, if no children, then to the person or persons (herein provided for) entitled to receive the same, as many dollars as there were members who paid the last assessment.' In June, 1878, several years after Robert Story became a member of the association, the company issued to him a certificate certifying that he was a member of the association, and that, in accordance with the requirements of the 'by-laws and articles of corporation,' his wife, Mary Story, was designated as his beneficiary of all funds due and payable by the association in case of his death. The certificate was executed by the president, secretary, and treasurer of the corporation, under the corporate seal. The plaintiff testified that she knew of the insurance, and that, with one or two exceptions, she paid the assessments out of money she had earned by sewing, and this evidence was uncontroverted.

"We think the instrument of June, 1878, operated as an assent by the association to the appointment of the plaintiff as beneficiary of the fund which should become payable on the death of Robert Story, and entitled her, upon his death, in the absence of any other or different appointment, to demand and receive it. It may be true that the by-law which prescribes the obligation and duty of the association on the death of a member contemplated a payment to the person who should be the lawful widow of a deceased member. But this was not a limitation of the power of the company, so as to prevent it from recognizing as the beneficiary a person who might be designated by the member as holding to him the relation of wife. Such

designation, made during the lifetime of the member, and assented to by the company, until changed by the mutual agreement of the member and the company, or at least until the arrangement was repudiated by one of the parties thereto, was binding. The nondisclosure by Story of the prior marriage was not a fraud upon the association. Its obligation was not in any way enlarged by making the plaintiff the beneficiary. Nor did the appropriation of the fund for her benefit contravene the policy or objects of the association. The plaintiff for 16 years lived with Story, believing herself to be his lawful wife. They had children dependent upon them for support. It was a case where it was the duty of Story to provide for them, and the provision he made through this insurance was in entire accord with the objects of the defendant's organization."[1]

In the case at bar, the beneficiary was generally known as the nephew of Miss Quick. He was dependent upon her. He had an insurable interest in her life. He was eligible to be named as a beneficiary in the defendant society. Whether he was named as a nephew, or as one having an insurable interest, would not affect the question of the desirability of Miss Quick as a subject of insurance. There is nothing to indicate that the application would not have been accepted if all the facts as to the relationship between the assured and the beneficiary had been disclosed, and we think the policy was good.

Counsel say, the settlement having been made under the direction of the court, it is a complete defense. It is a somewhat significant fact that neither Mr. Berdan nor W. H. Andrews, who acted for the company, was sworn as a witness. In his petition asking for his appointment as guardian, Mr. Berdan alleged that:

"The mother of said child abandoned it about nine years ago, and has never contributed anything to its support. Said child was born out of wedlock, and the mother has since married, and to a person not the father of said child. Said child has been in the custody and control of your petitioner for about nine years, and is being raised as a member of his family, and as his own child."

---

[1] *Supreme Tent K. O. T. M.* v. *McAllister*, 132 Mich. 69 (92 N. W. 770), is a similar case.

The record discloses that it was not true that the mother had abandoned the child, but, on the contrary, had made the arrangement with Miss Quick which has already been mentioned; and, as soon as she had knowledge of the proposed appointment of Mr. Berdan as guardian, she protested against his appointment, as an unfit person, and also protested against the settlement before it was made.   It also shows that Mr. Andrews, the agent of the company, was told by the husband of the mother of the child that Berdan was trying to get the money for his own use, and to this he replied: " You can look out for that; that is not my business." Nor was it true the child had been in his custody and control, as indicated in the petition.   The order authorizing the settlement was made April 4, 1901.   As early as April 13th of the same year Mr. Berdan notified the superintendent of the poor that he was not able to support the boy, and to write to his mother. The superintendent did so.   On the 16th of April she sent him money to pay his railroad fare to Albion.   When these facts are considered in connection with the further fact that a claim of $1,000 alleged to be due to a minor was settled for $300, we do not think it can be said the settlement was free from fraud and made in good faith.

Can it be said the complainant had a complete and adequate remedy at law, which should prevent the chancery court from taking jurisdiction ?   We think that question should be answered in the negative, under the following decisions:   *Maney* v. *Casserly*, 134 Mich. 252 (96 N. W. 478); *Lothrop* v. *Duffield*, 134 Mich. 485 (96 N. W. 577); *John Hancock Mut. Life-Ins. Co.* v. *Dick*, 114 Mich. 337 (72 N. W. 179, 43 L. R. A. 566); *Mactavish* v. *Kent Circuit Judge*, 122 Mich. 242 (80 N. W. 1086).

The decree is affirmed, with costs.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred.   GRANT, J., took no part in the decision.