**STATE ex VASTINE v CINCINNATI (city)**

Ohio Appeals, 1st Dist, Hamilton Co

No 5202.   Decided Jan 11, 1937

Fitzpatrick & Quane, Cincinnati, and John J. Rivers, Cincinnati, for relator.

John D. Ellis, City Solicitor, Cincinnati, and Leonard S. Shore, Assistant City Solicitor, Cincinnati, for respondents, City of Cincinnati et.

Kunkel & Kunkel, Cincinnati, for Elizabeth Funke, individually and as executrix.

## OPINION

By HAMILTON, J.

This is an original action in mandamus, by which the relator seeks to compel the respondents, trustees of the Retirement System of the City of Cincinnati, to pay to her the benefits under said retirement system accruing to the credit of George Funke, deceased, an employee of the city. He died a natural death while so employed. The respondent, Elizabeth Funke, is the surviving widow of George Funke, and the executrix of his estate.

The City of Cincinnati filed an answer in the nature of an interpleader, in which it admits in substance the facts alleged in the petition of the relator, and alleges the rival claimants to the fund, and alleges that the Board of Trustees is unable to determine who is entitled to said fund, and asks the court to determine the rights of the claimants to the fund, as between relator Ella May Vastine, and respondent, Elizabeth Funke.

The amount of money involved is not in question, and the City of Cincinnati admits that this amount is in the treasury of the City of Cincinnati, ready to be paid to the proper party.

The question for determination grows out of the provisions of paragraph D, §26-56 of the Ordinances of the City of Cincinnati, No. 412-1931, creating the retirement system.  Paragraph D is as follows:

"D.  Ordinary Death Benefit.

"(1)  Upon the receipt of proper proofs by the Board of the death of a member in service which is not the result of an accident in the actual performance of duty, as defined in Paragraph E (1) of this section, there shall be paid to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the Board, or if there be no such designated person then to his legal representative:

(a)  His accumulated contributions.

(b)  A benefit equal to a lump sum payment of fifty per centum of the compensation received by the employee during the year immediately preceding his death."

At the time George Funke became a member of the retirement system, he designated the relator Ella May Vastine by written designation duly executed and filed with the Board, as his beneficiary, and that designation was never changed by any act of Georie Funke during his lifetime.

The claim of the respondent, Elizabeth Funke, is that the relator never had, and did not have at the time of the death of George Funke an insurable interest, entitling her to receive the accumulated fund. She further claims that if the relator ever had such an insurable interest, that such interest terminated before the death of George Funke.

It appears that the relator was a niece of said George Funk by affinity, she being the daughter of his former wife's sister. When seven years of age, relator went to live in the home of George Funke; she being without means of support.  The facts show that George Funke maintained and educated her, and she had arrived at the age of seventeen years when the designation was made. He stood in the position of loco parentis to the girl all of these years and continued to so act until his marriage to the respondent, Elizabeth Funke, sub-

sequent to her being designated as beneficiary under his membership in the retirement system. That after the marriage of George Funke with the respondent Elizabeth Funke, the relator ceased to live in the home of George Funke, and obtained employment, supporting herself.

As before stated, it is claimed that if the relator at the time of the designation had an insurable interest, it ceased to exist when she left the home after the marriage of Funke and the respondent, Elizabeth Funke, and that the insurable interest must exist at the time the payment accrued under the terms of the ordinance.

That the relator had an insurable interest at the time she was designated by the deceased George Funke, we think is clear under the law and the authorities.

It has been held that relationship by affinity, accompanied by affection and support, creates such an interest. It may be reasonably considered that the relationship of niece, although by affinity, creates such an interest, and certainly is this so when accompanied by support and maintenance, and where the party stood in the relation of loco parentis,. Young v Hipple, Exr., 25 A.L.R. 1541, and cases cited. Thomas v Benefit Association, 46 L.R.A. (n.s.) 779. Carpenter v United States L. Ins. Co., 161 Pa. 9. Berdan v Milwaukee Mut. L. Ins. Co., 136 Mich. 396. See also: **Hessenmueller, Exr. v Sirilo et, 23 C. C. (N.S.) 313,** and cases cited.

It is strongly contended that a fair construction of the ordinance is that the insurable interest must exist at the time of the death of the members of the retirement system. If the fair construction of the ordinance required this conclusion, it does not follow that in this case the interest ceased when the relator left the home of George Funke. While the authorities cited relate to contracts of life insurance policies, the rule stated concerning the meaning of the term insurable interest, which is the term used in the ordinance and which we must consider council meant to be applied, has application to the instant case.

The writer is in accord with the statement in 22 **Ohio Jur., 408,** wherein it is stated:

"In case of life insurance where the contract is not one of indemnity, an insurable interest at the inception of the contract is sufficient if the contract be entered into in good faith, and it is immaterial that such interest ceases prior to the death

of the insured, since a policy, once valid, does not cease to be so by the cessation of the assured party's interest in the life insured, unless such be the necessary effect of the provisions of the policy itself."

See also: 22 **Ohio Jur., page 404, §262.**

Applying the rules laid down in Ohio Jurisprudence, supra, to the instant case, it would be entirely unreasonable to say that after having taken the niece, relator, into his household as a child seven years of age, maintaining and educating her, and occupying the position of loco parentis, the mere fact that the niece went out of the uncle's home on his remarriage, and supported herself would not establish altogether that she no longer had any reason to expect further assistance. There would certainly be reasonable grounds to expect further benefits arising from the relationship existing.

We are therefore of opinion that since the designation was valid, the mere fact that the relator left her uncle's home and supported herself would not cause a cessation of her interest in her uncle's life. We are further of the opinion that if the proper construction of the ordinance required her to have an insurable interest at the time of payment, which was at the time of death, she had an insurable interest sufficient to entitle her to the receipt of the fund as the designated party.

Moreover, the writer is of opinion that the ordinance does not require the construction that the insurable interest must exist at the time of the death of the member. The ordinance is not entirely clear in its expression. It provides that there shall be paid to such person having an insurable interest in his life as he shall have denominated by written designation duly executed and filed with the board. It is only when there be no such designated person that the fund passes to the legal representative. There is such designated person, nominated at the time the deceased became a member. To make the designation legal, the beneficiary must have had at the time an insurable interest. The designation being proper, and there being no provision in the ordinance for changing the beneficary, except upon voluntary retirement, it seems the fair construction of the ordinance and the intention of council was that the money would be paid to the designated party upon the death of the member. There being no provision in the ordinance for the change of the beneficiary, the designation once having been made, whether the member

could change the beneficiary except as provided in paragraph 4 of §26-56, relating to voluntary retirement, is a question. However that may be, the deceased did not make any change or attempt to do so. The provision under option 1 of paragraph 4, throws some light on the meaning of council as to the interpretation of paragraph D, which provides upon retirement, that if he dies before he has received in payment of his annuity the present value of his annuity as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as he shall have nominated by written designation duly executed and filed with the Board.

There is no question made in this option concerning an insurable interest, but it is payable to the person nominated by the written designation. There is no more reason for reading into paragraph D "insurable interest at the time of death," than there would be in option 1, paragraph 4.

The writer's conclusion is that paragraph D means that designated party must have an insurable interest at the time of designation and not at the time of payment; that the relator had an insurable interest at the time of designation, and that that insurable interest did not cease when she left the home of her uncle to support herself, that she possessed such an interest at the time of his decease if that were necessary for a determination of the case.

Under the law and the facts,, the relator is entitled to receive the fund in question, and we find that the respondent, Elizabeth Funke is not entitled to receive the same.

The writ will be granted accordingly.

ROSS, J, concurring in judgment in separate memorandum.

## CONCURRING OPINION

By ROSS, J.

Original action in mandamus.

George Funke was an employe in the Highway Department of the City of Cincinnati, and became entitled by reason of his position, compliance, and the provisions of the City Retirement System to certain benefits provided for such city employes.

The relator is the daughter of a sister of the first wife of deceased. Funke died childless. His father and mother predeceased him. He left a widow.

The relator was designated by the deceased employe as the beneficiary of death benefits provided for such employe by the system. This designation was made at the time deceased became a member of the department. The relator was then 17 years of age. She had been an inmate of decedent's home ever since she was seven years of age, when, upon the death of her father, she came to live with him. Her mother also lived with decedent. Both mother and daughter rendered decedent services in his home and also in and about his garage business. The relator was reared, educated, and maintained by decedent until his second marriage in September, 1934. She then left his home.

His widow was the beneficiary of his estate, amounting to some $30,000. Funke died in April, 1936. The widow has made claim to the death benefits of which relator was the original designated beneficiary. At the time of the decedent's death, the designation had not been changed.

The respondents, the City of Cincinnati and the trustees of the retirement System of such city have taken no action upon the claim either of the relator or of the widow.

To this proceeding, the city has filed an answer which is in the nature of a bill of interpleader, stating because of the adverse claims, hereinbefore set out, it refuses to pay either claimant the fund in question. It further states: "that it is ignorant of the rights of the respective claimants, and, does not know to which it can safely pay the money; that it is ready and willing to pay the same as the court may direct, and hereby offers to do so in order that the said claimants may settle their claims between themselves." The prayer of the answer is "for an order of this court to pay said sum of $659.66 to whomsoever the court may direct."

The respondents, other than the City has made no answer to the petition, when the case was submitted.

Article IV, §6 of the Constitution of Ohio fixes the original jurisdiction of this court. This original jurisdiction does not include interpleader either statutory or equitable. An answer or cross-petition is entitled to no greater consideration than a petition, when the jurisdiction of a court over the subject-matter is involved. In other words, if a court would not have original jurisdiction of the subject-matter of a cross-petition or answer, if it were contained in a petition, it does not have such jurisdiction because contained in an answer or cross-petition filed in response to a petition, containing a cause of action the sub-

ject-matter of which is within the original jurisdiction of this court.

The answer filed in this action is therefore valueless, and may be ignored.

The questions then presented by the petition are: Does the relator have a clear legal right to the relief requested? Has she an adequate remedy at law? See: 25 Ohio Jur., 997, and note 23, supplement. **State ex Miller v Industrial Commission, 128 Oh St 254.**

We prefer to so consider the matter, rather than to take summary action upon the failure of the respondents to file a valid defense to making the alternative writ permanent.

The right to maintain this action of mandamus seems to be clearly authorized by the case of **State ex v Conners et, 122 Oh St 359,** wherein it is stated in paragraphs 1, 2 and 3 of the syllabus:

"1. The police relief fund of the City of Cincinnati was established and is maintained by virtue and under authority of statutory law, and the powers of the board of trustees of the police relief fund with respect to such fund are the powers conferred by statute.

"2. A discretion has not been conferred by statute upon the board of trustees of the police relief fund to deny a pension to a retired or dismissed police officer who is entitled to a pension by the rules of such board duly adopted and in force at the date of his retirement or dismissal.

"3. Rule 45 of the board of trustees of the police relief fund of the City of Cincinnati, 'Any member of the Police Department who has served fifteen consecutive years, who is discharged for any offense other than dishonesty, cowardice or being convicted of a felony, shall, upon the approval of the Board of Trustees of the Police Relief Fund, be paid a pension from said fund in amount equal to $2.00 per month for each year of consecutive service, provided the pension under this rule shall in no case be more than $50.00 per month,' does not confer upon such board a discretion to deny a pension to a 'member of the police department who has served fifteen consecutive years, who is discharged for any offense other than dishonesty, cowardice, or being convicted of a felony'."

In the case at bar the right to benefit is governed by the ordinance of the city:

**"D. Ordinary Death Benefits:**

"(1) Upon the receipt of proper proofs by the Board of the death of a member in service which is not the result of an accident in the actual performance of duty, as defined in paragraph E (1) of this section, there shall be paid to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the Board, or if there be no such designated person, then to his legal representative:

(a) His accumulated contributions.

(b) A benefit equal to a lump sum payment of fifty per centum of the compensation received by the employee during the year immediately preceding the death."

While in the Conners case the appropriate statute is involved, we consider the holding as applicable to an appropriate city ordinance. Upon the death of the employe the rights of the beneficiary became fixed beyond the discretion of the board. No discretion is vested in the board to deny the rights of relator, if she is entitled to the benefits provided for in the ordinance.

That the regulations may be changed before death is beside the question. The case of **Mell et, Trustees v State ex Fritz, 130 Oh St 306,** is not applicable.

The ordinance in question requires two things must exist in the payee of the benefits:—First, that such person must have an insurable interest. The language used requires such characteristic to exist at the time of payment, "shall be paid to such person having an insurable interest." Secondly, the payee must have been designated by the employe. As to the latter requirement, the relator qualifies without question. Had she an insurable interest at the time payment was due? Her relationship as a protege, helper about the house and business of the decedent for many years, her relationship by marriage all taken together unqualifiedly justify such conclusion as to the period up to within two years of the death of the employe, when he again married. In 14 R.C.L., §96, p. 919, it is stated:

"While all the authorities are agreed that an interest of some sort must exist in the case of life insurance, there is not exact harmony on the question of what constitutes the requisite interest. There are cases which hold that the interest must be a pecuniary one and that near relationship is not per se enough. The better view, however, seems to be that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life. Accordingly it is deemed unnecessary that

the advantage or benefit be capable of pecuniary estimation, but an insurable interest arises from any relation, whether of consanguinity or affinity, which is such as warrants the conclusion that the beneficiary had an interest, whether pecuniary or arising from dependence or natural affection, in the life of the person insured. But in all cases there must be a reasonable ground founded on the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured."

The reason existing in the policy of the state requiring one who insures another's life for his own benefit to have a sound reason for desiring the continuance of the life of the assured is obvious. To permit any person, without such reason and cause to desire the continuance of the life, of one whose life he insures, would be at least an indirect invitation to the unscrupulous to profit by death of the insured. The fact that such considerations are completely foreign to the issues here presented makes it extremely difficult to find direct authority in point. Public policy is not here involved, only legislative construction. The situation here presented is in principle rather than of one who insures his life for another, against which there is no restriction. It is only because of the peculiar, and we may properly say unconsidered language of the ordinance that we find ourselves presented with the necessity of referring to general principles of insurance in order that we may determine whether the relator is within the provisions of the language used in the ordinance, and has an insurable interest.

In considering what has been written upon the subject, however, the factors just mentioned are entitled to weight and those cases containing rigorous inhibitions against recovery certainly have no application. See 32 C. J. 1110.

Although it must be admitted the relator had no legal claim upon the deceased employe, certainly his kindness and their association for many years coupled with her services in his interest, both in his home and business, would justify the relator in believing that should adversity fall upon her, she could in all confidence look to the deceased for aid and assistance. His continued life was to her advantage. His death, a distinct loss. His remarriage would not, of itself, foreclose the right to such normal expectancy. Other matters might

be considered strengthening a conclusion in favor of the relator. The trustees and the city do not in fact dispute the claim of the relator. The real contestant is the widow, who has no standing in this action in spite of the fact she was erroneously made a party.

An alternative writ has been issued, and no just reason has been advanced why the relator should not have a permanent writ, other than that which the court sua sponte has presented to itself, as herein considered. The relator being entitled to the benefits under the ordinance, no discretion in the trustees has been conferred by the ordinance to deny the benefits, and the writ will be made permanent.

TATGENHORST, PJ, concurs with ROSS, J.