MALICKI v. CHICAGO GUARANTY FUND LIFE SOCIETY.

119 151
s123 149
119 151
d136 ³399
119 151
151 227

1. LIFE INSURANCE — APPLICATION — MISREPRESENTATIONS — INSTRUCTIONS.

In an action upon a life-insurance policy issued upon the rep, resentation of the insured that a bar which he maintained in connection with his grocery was attended to "exclusively" by his clerk, an instruction that, if the insured "occasionally" tended bar, it would not avoid the policy, is erroneous-where coupled merely with the general instruction that an habitual tending of the bar would have that effect, since the jury might infer that nothing short of such habitual tending would work a forfeiture.

2. SAME—ISSUANCE OF POLICY—DATING.

The fact that a life-insurance policy is dated the day before a supplemental application, containing the answers of the insured to certain special questions submitted by the company, was received, does not show that it was not issued in reliance upon the statements contained in the application, since a policy is not issued until delivered.

3. SAME—USE OF SPIRITUOUS LIQUOR.

An applicant for insurance, in reply to the question, "Do you drink beer, ale, wine, or spirits, and, if so, state what, how often, and how much," answered, "Yes; two or three glasses of beer daily." *Held*, that if the insured was in the habit of using spirituous liquors, though not to excess, the policy was avoided.

4. SAME—VIOLATION OF CONDITIONS—BURDEN OF PROOF.

The burden of proof is upon an insurance company to show a violation of conditions avoiding an otherwise valid policy

Error to Wayne; Corbett, J., presiding. Submitted October 5, 1898. Decided January 3, 1899.

*Assumpsit* by Teofila Malicki against the Chicago Guaranty Fund Life Society on a policy of insurance. From a judgment for plaintiff, defendant brings error. Reversed.

This is an action upon a policy of insurance issued upon the life of John Malicki, the husband of plaintiff, who was the beneficiary named in the policy. The application contained the following questions and answers:

"*Q.* Do you drink beer, ale, wine, or spirits? If so, state what, how often, and how much.

"*A.* Yes; two or three glasses of beer daily.

"*Q.* Have you ever drank beer, ale, wine, or spirits to excess?

"*A.* No.

"*Q.* Have you now, or have you ever had, any interest in the manufacture or sale of intoxicating liquor of any kind, either directly or indirectly?

"*A.* Yes; keep liquors in my store."

Additional information was asked, to which Mr. Malicki replied as follows:

"In regard to my occupation, would say that I am proprietor of grocery, and have a bar in connection. I have a clerk that attends to the bar trade, and I attend to the grocery, and the buying and marketing. My bar trade is attended to exclusively by my clerk."

These statements formed the basis for the issue of the policy.

The body of the policy is general, and insured the life of Mr. Malicki against death. But for the clause next below quoted, liability would have attached for any cause of death. This clause is as follows:

"This policy is issued upon the agreements contained in the application therefor, and upon condition that the answers and statements in said application are full, complete, and true. Said application, together with all privileges, conditions, and requirements indorsed hereon, whether written or printed, are hereby made a material part of this contract."

The condition upon the back of the policy, so far as it is material, reads:

"Death caused or superinduced by the use of intoxicants, * * * within three years from the date of the within policy, is a risk not contemplated or covered by

said policy, and, in case of death from any of the afore-
said causes, the amount recoverable shall be limited to the
premiums paid on said policy, with interest.  *  *  *  If
this policy is obtained by fraud, or if any statement con-
tained in the application on which this policy is based, or
in the proof of death, is found to be fraudulently untrue,
then this policy shall be *ipso facto* null and void."

Mr. Malicki died October 23, 1896, eight months after
the issue of the policy.   Plaintiff notified the company of
his death, and asked for blank proofs of loss, which were
furnished.   These were filled out, signed, and sworn to by
plaintiff, October 31, 1896, and forwarded to the company.
The cause of death was stated to be a severe cold.   She
gave the name of the physician who attended him in his
last illness as Dr. W. J. Brand.   A blank proof appears
to have been sent to Dr. Brand, who filled it out and swore
to it on the 19th day of November, 1896, and forwarded it
to the company.   In this affidavit the immediate cause of
death was said to be delirium tremens.

Plaintiff made her case by introducing the policy of
insurance and proofs of death which had been submitted
to the company, and rested.   Defendant then introduced
Dr. Brand, who testified that he attended Mr. Malicki in
his last illness; that the report he sent the company was
true, and correctly stated the cause of death, which report
was received in evidence.   Defendant then introduced
testimony tending to show that Mr. Malicki was frequently
intoxicated, that he drank spirituous liquors, and that he
frequently attended the bar.   One witness testified that
she was frequently in the grocery for several years, and
that Malicki, most all of the time when she was there, was
attending the bar, "selling drinks to whoever wanted to
buy."   The record then states that the plaintiff produced
evidence "in rebuttal of the evidence produced by the
defendant."   Verdict and judgment were for the plaintiff.

*Moore & Moore* and *E. C. Bolton*, for appellant.

*T. E. Tarsney* and *George B. Greening*, for appellee.

Grant, C. J. (*after stating the facts*).   1.  If all the testimony on the part of the defendant was true, the policy was void, and the court should have so instructed the jury.    But the record does not contain all of the evidence, and, in view of the statement that there was testimony in rebuttal of that of the defendant, we cannot hold that the jury should have been so instructed.    The court in-structed the jury as follows:

"It is further claimed by the defendant that this policy was issued on condition that the deceased should not attend bar in his saloon.   It appears from the evidence that the occupation of the deceased was grocery and saloon keeper.    It also appears from a part of the application for insurance that the deceased stated that he did not attend bar, but that his business was in the grocery, and that the bar was attended exclusively by his clerk.   That is a material condition, gentlemen of the jury.   It was com-petent for the defendant to make that a condition, and having made it such, and the deceased having subscribed to it as a part of the application, it becomes binding upon the plaintiff.   Now, gentlemen of the jury, if you find from the evidence that John Malicki was in the habit of attending bar,—that is, if that was his business; that he attended bar habitually, instead of attending to the gro-cery,—in other words, if his business was to attend bar in that saloon, then your verdict must be for the defendant. But you are instructed, if he occasionally attended bar, if he went behind the bar occasionally, and dealt out liquors to customers, it should not avoid the policy; but if that was his business, if he was in the practice and in the habit of doing so, it would avoid the policy, but an occasional sale by the deceased to the customers would not."

There is no doubt about the terms of this contract.   Mr. Malicki, in order to obtain this insurance, represented that he did not attend the bar, but that his bar was exclusively attended to by his clerk.   Relying upon this representa-tion, this policy was issued.   The vice of the instruction lies in the fact that under it the jury might have found that nothing short of an habitual tending of the bar, and making that his business, would avoid the policy, and that anything short of that would be an occasional act.

Clearly, if Mr. Malicki daily tended the bar while the regular bartender was absent at his meals, or on other occasions, this would be contrary to the terms of the policy. If he wanted a policy upon that basis, he should have stated the facts. Whether a single act or a few acts of tending the bar would avoid. the policy, we need not determine. The jury evidently received no instruction as to what occasional acts would or would not have that effect.

It is urged that the policy, being dated the day before this part of the application was made, was not issued in reliance upon this representation. The only proof on this point is that this paper, with the other two, constituted the application. The date of the policy does not control. The delivery is essential. It was not issued till delivered.

2. The court instructed the jury that if Mr. Malicki, at the time of effecting the insurance,—

"Was in the habit of drinking intoxicating liquors to excess, that would end the case, and your verdict should be for the defendant. If you find that he was not an intemperate user of alcoholic liquors, it would not avoid the policy. It is a simple question whether he was an excessive drinker. If he was an habitual excessive drinker, it would avoid the policy."

Here, again, plaintiff is confronted with the terms of the policy. Mr. Malicki distinctly stated in his application that he only drank two or three glasses of beer daily. This was in reply to the question: "Do you drink beer, ale, wine, or spirits, and, if so, state what, how often, and how much." The representation was clear and explicit that he did not drink spirituous liquors. Defendant asked this, and was entitled to know it. If he was in the habit of using spirituous liquors as a beverage, he should have so stated. The instruction was erroneous. ˙ The court should have instructed the jury that the habit of using spirituous liquors before the issue of the policy was contrary to the representation, and, if proven, avoided it. Cases like that of *Knickerbocker Life Ins. Co.* v. *Foley*,

105 U. S. 350, have no application. In that case the representations were that the applicant had always been of temperate habits. The very answer implied the use of intoxicating liquors, and it was very properly held that the occasional use, and an exceptional case of excess, did not justify the conclusion that he was a man of intemperate habits.

3. We think the court committed no error in instructing the jury that the burden of proof was upon the defendant to show that the deceased died from delirium tremens. A distinction is made between the principal contract as found in the body of the instrument, and conditions or stipulations indorsed thereon, "which are intended to avoid the defendant's promise by way of defeasance or excuse." The party relying upon the breach of such conditions to defeat his liability assumes the *onus probandi*. *Coburn* v. *Insurance Co.*, 145 Mass. 226. The contract of insurance in that case was substantially identical with this. See, also, *Piedmont, etc., Ins. Co.* v. *Ewing*, 92 U. S. 377; *Redman* v. *Insurance Co.*, 49 Wis. 431.

Judgment reversed, and new trial ordered.

The other Justices concurred.