[L. A. No. 6533. In Bank.—September 27, 1921.]

RACHEL A. McEWEN, Appellant, v. NEW YORK LIFE
INSURANCE COMPANY (a Corporation), Respondent.

[1] LIFE INSURANCE—MEDICAL EXAMINATION—ACCIDENTS.—In a medi-
cal examination on an application for life insurance, a question
as to what illnesses, diseases, or accidents the applicant has had
since childhood calls for facts in regard to accidents suffered since
childhood, as well as illnesses and diseases, and an answer which
omits all mention of accidents is, in effect, an answer that no
accidents have been sustained.

[2] LAW OF THE CASE—MEANING OF.—The doctrine of the law of the
case means simply that the court having once decided the law and
the cause having gone back to the lower court for further pro-
ceedings in accordance with the law as thus established, and the
parties and the lower court having acted in reliance upon that
law, the appellate court will not, upon a second appeal, again
enter into a consideration of the question, but, if the facts and
circumstances are substantially the same, will treat it as settled
law, regardless of its accuracy.

[3] LIFE INSURANCE—FALSE ANSWERS—DIRECTING VERDICT.—In an
action on a life insurance policy where the evidence conclusively
shows that the answer to a question concerning "illnesses, diseases,
and accidents" was untrue and, according to the law laid down
for the guidance of the trial court, the truth or falsity of the
answers was the determining factor and the only question to be
submitted to the jury, it was proper for the judge to direct a
verdict for defendant upon the theory that a material question
had been falsely answered by the decedent.

[4] ID.—ACCIDENT—INFORMING MEDICAL ADVISER—INCOMPETENT EVI-
DENCE.—In an action on a life insurance policy, where it is con-
tended in defense that the insured falsely answered a question on
his medical examination in failing to report an accident, there is
no competent evidence in support of plaintiff's contention that the
decedent informed the medical examiner of the accident, where
the only evidence tendered was that of the physician, who testified
that he had no independent recollection whatever of the examina-
tion and a memorandum signed by the witness by which it was
sought to refresh his memory dated nine years after the examina-
tion was not shown to have been written or dictated by the wit-
ness or to have been written at a time when it was fresh in the
witness' memory or that he knew the fact was correctly stated
therein.

[5] Id.—Witnesses—Refreshing Memory—Memorandum.—A witness cannot refresh his memory or testify from a memorandum unless it is made to appear that the memorandum complies with certain qualifications specified in section 2047 of the Code of Civil Procedure.

[6] Id.—Evidence—Failure to Call Witness—Presumption.—In such an action the contention of plaintiff that since defendant objected to plaintiff's questioning the physician who examined the decedent for defendant and itself failed to call the physician, the presumption arises that the physician's testimony would have been adverse to defendant, cannot be maintained, as defendant was under no obligation to call the physician as its own witness or to permit him to testify for plaintiff, especially as the physician was unable to recall the medical examination at all and there was no legally competent memorandum to aid him.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Murphey & Poplin for Appellant.

Meserve & Meserve and Paul H. McPherrin for Respondent.

LENNON, J.—This action was instituted for the recovery of the amount of a life insurance policy issued by the defendant, New York Life Insurance Company, in July, 1910, to plaintiff's son, Charles B. McEwen, who died in November, 1910. Defendant resists payment of the policy upon the ground that the decedent procured the issuance of the policy by means of fraud, concealment, and misrepresentations in answering written questions propounded to him by defendant's medical examiner on June 29, 1910, and that defendant accepted the application and issued the policy in reliance upon the truth of these answers. The present litigation has been pending for over nine years and this is the third appeal which has been taken. The first trial resulted in a verdict in favor of plaintiff, but judgment thereon was reversed by the district court of appeal upon the ground that the trial judge had submitted to the jury the issue of the materiality of the questions claimed to have been falsely answered (*McEwen* v. *New York Life Ins. Co.,* 23 Cal. App. 694, [139 Pac. 242]); likewise a judgment entered upon a

187 Cal.—10

verdict rendered in plaintiff's favor upon the second trial was reversed by the district court of appeal. (*McEwen v. New York Life Ins. Co.*, 42 Cal. App. 133, [183 Pac. 373].) On the third trial the judge directed a verdict for the defendant, and plaintiff appeals, claiming that a directed verdict was unwarranted by the facts of the case.

The only answer of decedent in the medical examination which is of importance for the purposes of this appeal is the following: "What illnesses, diseases, or accidents have you had since childhood? (The Examiner should satisfy himself that the applicant gives Full and Careful Answers to this question.) Name of Disease, Typhoid pneumonia. Number of Attacks, One. Date, 1891. Duration. Severity, Severe. Results, Complete recovery." The above-quoted question was asked for the purpose of ascertaining information concerning the condition of decedent's health in certain particulars deemed deserving of especial consideration in connection with the issuance of a life insurance policy. The question is neither ambiguous nor misleading. [1] It calls for facts in regard to *accidents* suffered since childhood, as well as illnesses and diseases, and an answer which omits all mention of accidents is, in effect, an answer that no accidents have been sustained. (*Malicki v. Chicago Guar. Fund Life Soc.*, 119 Mich. 151, [77 N. W. 690].) At the close of the written questions and answers the insured certified "that I have carefully read each and all of the above answers, that they are each written as made by me that each of them is full, complete and true." It was proven by the defendant company, and is conceded by plaintiff, that in July, 1909, just a year prior to the application for the policy, the decedent Charles B. McEwen was injured by being struck or kicked in the chest by the foot of a mule, as a result of which his chest was injured, his back strained and one rib broken; owing to temporary total disability caused by the injury he received from an accident insurance company the sum of $25 per week for a period of sixteen weeks, amounting in all to four hundred dollars. The injury received for the time being rendered him unfit for any business whatsoever and seriously impaired his health. Notwithstanding the serious consequences ensuing from the accident sustained by decedent in July, 1909, which disabled him for a period of nearly four months, he failed to set

forth the accident in his answers to the questions asked by the defendant company in an examination held on June 29, 1910. Inasmuch as decedent made no mention of accidents in answer to a question calling for disclosures of accidents, and since, on the third trial, it was conceded that decedent had sustained the above-described accident less than a year before answering the said question, the conclusion is inescapable that the question was falsely answered.

Upon the second appeal of this case the district court of appeal held that it was error for the trial judge to submit to the jury the question whether or not the accident tended to effect the longevity of the decedent; that the only question to be passed upon by the jury was the truth or falsity of decedent's answers, and that a determination of this point would settle the rights of the parties. [2] This statement of the law by the district court of appeal became the law of the case and was binding upon the trial court upon the third trial. ''The doctrine [of the law of the case] means simply this: That the court having once decided the law, and the cause having gone back to the lower court for further proceedings in accordance with the law as thus established, and the parties and the lower court having acted in reliance upon that law, this court will not, upon a second appeal, again enter into a consideration of the question, but, if the facts and circumstances are substantially the same, will treat it as settled law, regardless of its accuracy.'' (*Brett* v. *S. H. Frank & Co.*, 162 Cal. 735, 739, [124 Pac. 437, 439].) [3] Since the evidence conclusively shows the answer to the question concerning ''illnesses, diseases, and accidents'' was untrue and, according to the law laid down for the guidance of the trial court, the truth or falsity of the answers was the determining factor and the only question to be submitted to the jury, it was proper for the judge to direct a verdict for defendant upon the theory that a material question had been falsely answered by decedent. (*Wilson* v. *Alcatraz Asphalt Co.*; 142 Cal. 182, [75 Pac. 787]; *Estate of Baldwin*, 162 Cal. 471, [123 Pac. 267].)

It is claimed that, on the third and last trial, the court erroneously sustained objections to certain evidence offered by plaintiff. This evidence, plaintiff contends, tended to show that decedent informed defendant's medical examiner of the said accident, and that the examiner thought the acci-

dent unimportant and for that reason did not include it in the written answer. We may assume, without deciding, that, had that been shown to be the fact, the company, and not decedent, would have been responsible for the failure to mention the accident in the written answers to the medical examination and, therefore, that it would have been error to exclude competent evidence on this point. [4] We are of the opinion that no competent evidence in support of this contention was proffered by the plaintiff. The only evidence sought to be introduced on this point was the testimony of the physician who examined decedent on June 29, 1910. The physician testified that he had no independent recollection whatever of his examination of the decedent. It appears that the witness was seriously ill in September, 1919, and that the trial at which he testified took place in November, 1919. [5] Plaintiff's attorney sought to have the witness refresh his memory from, or testify from, a written memorandum. Defendant's counsel objected to the witness testifying from this memorandum, and the court sustained the objection. Section 2047 of the Code of Civil Procedure provides that a witness may refresh his memory respecting a fact from a written memorandum or "may testify from such a writing, though he retain no recollection of the particular facts." A witness cannot, however, refresh his memory or testify from such a memorandum unless it is made to appear that the memorandum complies with certain qualifications specified in said section 2047 of the Code of Civil Procedure. In the present case the only fact disclosed in connection with the memorandum, aside from the fact that it was dated July 19, 1919, nine years after the medical examination, is the fact that it was signed by the witness; there was no showing that the witness wrote or dictated the memorandum, or that it was written at a time when the fact was fresh in his memory, or that he knew the fact was correctly stated therein. It would, therefore, have been improper for the court to have permitted the witness to testify from the memorandum in question. (*Morris* v. *Lachman*, 68 Cal. 109, 112, [8 Pac. 799]; *Stone* v. *San Francisco Brick Co.*, 13 Cal. App. 203, [109 Pac. 103].) Furthermore, the memorandum itself, which is set forth in the bill of exceptions, furnishes evidence of its own unre-

liability. It purports to have been made nine years after the happening of the event, and states that the physician examined decedent in *1908*, and found no evidence of injury from the accident, whereas the examination with which the parties are concerned in the instant case is one held in 1910, and the accident occurred in 1909.

[6] Counsel for plaintiff further contends that, since defendant objected to plaintiff's counsel questioning the physician who examined decedent for the defendant and itself failed to call the physician, the presumption arises that the physician's testimony would have been adverse to defendant. (Code Civ. Proc., sec. 1963, subds. 5 and 6.) However, defendant was under no obligation to call the physician as its own witness or to permit him to testify for plaintiff, particularly in view of the fact that the physician was unable to recall the medical examination at all, and it does not appear that there was any legally competent memorandum which he might use to aid him in testifying.

Defendant, by its answer, alleged the cancellation of the policy and deposited in court $347.10, the amount of premium paid on the policy. It is claimed that plaintiff is entitled to this sum and that she was deprived of it by the directed general verdict in favor of defendant. We are entirely satisfied that such is not the effect of the verdict or judgment given. The request of the defendant for an instruction directing a verdict in favor of defendant was based on its claim that the policy was voidable on the ground of fraud on the part of the insured in obtaining the policy, and that, therefore, the defendant had a right to rescind. This was the position of the trial court in directing a verdict for the defendant, and this result carried with it necessarily the implication that the money paid into court should be restored to the party entitled thereto. There was uncontradicted evidence sufficient to support a finding of a gift of the policy by the insured to the plaintiff, and the directed general verdict in favor of the defendant necessarily implied that the plaintiff was entitled to the premium money paid into court by the defendant for the purpose of effecting a rescission. The judgment given in this case upon the directed verdict does not preclude the plaintiff from recover-

ing this money. Neither does our affirmance of such judgment have any such effect.

The judgment is affirmed.

Lawlor, J., Sloane, J., Wilbur, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., who was absent.