[L. A. No. 9991. In Bank.—March 27, 1928.]

LONDON GUARANTEE AND ACCIDENT COMPANY, LTD., Petitioner, v. THE INDUSTRIAL ACCIDENT COMMISSION, etc., and SARAH JANE BROOKE et al., Respondents.

E. R. Young and H. R. Kelly for Petitioner.

G. C. Faulkner for Respondent Industrial Accident Commission of California.

LANGDON, J.—This is a proceeding in *certiorari* to review an award of the Industrial Accident Commission for payment of $150 for the burial expenses of John James

Uttley Brooke, an unmarried minor nineteen years of age, who was drowned in Santa Monica Bay on April 8, 1926, while in the service of the Morris Pleasure Fishing, Inc. The petitioner was the insurance carrier of the employer; and the question presented is whether the case must be relegated to the exclusive cognizance of a court of admiralty, or may be brought within the purview of the Workmen's Compensation Act of this state.

On a petition to the Industrial Accident Commission filed by the mother and the stepfather of the deceased, hearings were had and findings made that Brooke, while employed as a spare skipper, met his death by drowning in an accident occurring in the course of, and arising out of, his employment; that he was not at the time engaged in maritime employment; and that both he and his employer were subject to the provisions of the Workmen's Compensation Act (Stats. 1913, p. 279). The commission further found that neither the mother nor the stepfather of the deceased was dependent upon him; and, accordingly, the award was limited to the reasonable expenses of burial, which were fixed at $150.

The evidence taken at the hearing showed the facts to be as follows: The Morris Pleasure Fishing, Inc., is a corporation which carries on the business of maintaining and operating from Santa Monica Bay a small fleet of fishing vessels for the accommodation of the public seeking recreation in deep-sea fishing. In the fishing seasons its practice has been to have excursions daily from Santa Monica Bay to the ocean fishing grounds, a distance of three to five miles with fixed charges both for half-day and full-day trips. For use in this business the company has several vessels, ranging from four to fourteen tons registry, equipped with gas engines and capable of cruising a distance of five hundred miles. The business has been confined entirely to the maintenance of these pleasure-fishing vessels and the transportation of patrons to and fro by water, except that excursionists have also been supplied with bait. As one of the necessary incidents of its business the company employs seamen to navigate its vessels; and before and at the time of the accident which occasioned Brooke's death, he was in the company's employ as an apprentice navigator and seaman. In that capacity he made daily trips

as required with the company's vessels, and at times substituted as "spare skipper" for one of the regular skippers. On April 8, 1926, one of the company's fishing vessels called "W. K.," of about seven tons registry, was moored, with no one aboard, in Santa Monica Bay about three-quarters of a mile to a mile from the pier. A storm having arisen, the vessel broke from her moorings early in the afternoon, and began to drift toward the shore. In an effort to save the vessel from destruction, Captain Morris, as Brooke's superior officer, had Brooke and another employee, named Gregory, put off from the pier with the captain himself, in a boat about eighteen feet long, with the purpose in mind of boarding the "W. K." and returning her to her anchorage. But as they neared the drifting vessel, their boat was capsized by a heavy wave and all three were drowned.

The petitioner here contends that Brooke's employer was engaged exclusively in a maritime industry; that its contract with Brooke was for maritime services alone; and that Brooke's life having been lost in such service in navigable waters of the United States, the rights and liabilities of the parties are to be determined by the general maritime law, and hence there was no jurisdiction in the Industrial Accident Commission to conduct any hearing or to grant any award.

The Commission does not dispute the fact that the casualty occurred in navigable waters; but it contends that as the business of the employer was a pleasure business, there was not a maritime contract touching rights and duties pertaining to commerce or navigation in a way to invoke the rules of maritime law and exclude the case from the juridical competency of the state tribunals, and that the matter is one merely of local concern. It is asserted that the application of the state compensation act and the assertion of jurisdiction by the local courts in the instant case will not work any prejudice to the characteristic features of the general maritime law or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

The question involved here was carefully analyzed in the case of *State ex rel. Cleveland Engineering Construction Co.* v. *Duffy et al.,* 113 Ohio St. 96 [148 N. E. 572], where the

court says: "Under these contracts of employment do the rights and liabilities have a direct relation to navigation? And would the application of the local law (Compensation Act) materially affect any of the rules of the sea and thereby the uniformity which is essential to maritime law? . . . A careful examination of the range of work which the employees of plaintiff performed would seem to disclose nothing that had a direct bearing upon the maritime service, navigation, or maritime commerce, either interstate or foreign."

It is pointed out in the case last cited that there are two parallel lines of decisions, one line having its basis in the decision of the United States supreme court in the Jensen case (*Southern Pacific Co.* v. *Jensen*, 244 U. S. 205 [Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 61 L. Ed. 1086, 37 Sup. Ct. Rep. 524]), the other having its basis in the Rohde case (*Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469 [25 A. L. R. 1008, 66 L. Ed. 321, 42 Sup. Ct. Rep. 157]). The court further says: "A large number of cases may be cited which adopt the principle announced in *Southern Pacific Co.* v. *Jensen, supra,* but all that class of cases is founded upon some conflict of the law of the sea or maritime law with the local statute. These cases often relate to stevedores or longshoremen unloading the cargo of vessels or artisans working upon a vessel engaged in interstate or foreign trade; in fact, all of them have some direct bearing upon maritime law. On the other hand, the courts distinctly recognize a group of cases, of which *Grant Smith-Porter Ship Co.* v. *Rohde, supra,* is the leading case, all founded upon the principle that their provisions were found not to be in conflict with any essential feature of the general maritime law. *Industrial Commission of N. Y.* v. *Nordenholt Corp.,* 259 U. S. 263 [25 A. L. R. 1013, 66 L. Ed. 933, 42 Sup. Ct. Rep. 473], is of this class; also *Western Fuel Co.* v. *Garcia,* 257 U. S. 233 [66 L. Ed. 210, 42 Sup. Ct. Rep. 89]."

It is true the decisions have made it rather difficult to ascertain the exact dividing line between casualties which are strictly maritime and those which are more properly designated as maritime or nonmaritime. It would seem that the rigor of the Jensen case has been modified by subsequent cases and that the trend of the more recent cases is to permit the state law to operate where the employment has

no direct relation to interstate or foreign commerce or navigation, notwithstanding the fact that the casualty occurs in navigable waters.

It must be the policy of this court to give force and effect to the statutes of the state unless they are clearly unconstitutional. The Compensation Act of this state does not conflict with any federal statute. The action was not brought to recover damages for a tort, but solely for compensation under our statute. We think the case is similar in principle to the cases of *City of Oakland* v. *Industrial Acc. Com.*, 198 Cal. 273 [244 Pac. 353], and *Alaska Packers* v. *Industrial Acc. Com.*, 200 Cal. 579 [253 Pac. 926].

The award of the Industrial Accident Commission is affirmed.

Shenk, J., Waste, C. J., Curtis, J., Seawell, J., Richards, J., and Preston J., concurred.

Rehearing denied.

All the Justices present concurred.