[S. F. No. 13634. In Bank.—January 27, 1930.]

UNITED DREDGING COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and OLLIE KOPKE, Respondents.

[S. F. No. 13635. In Bank.—January 27, 1930.]

UNITED DREDGING COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and OLLIE KOPKE, Respondents.

R. P. Wisecarver and Redman & Alexander for Petitioners.

G. C. Faulkner and Edward O. Allen for Respondents.

SEAWELL, J.—Petitioners seek by *certiorari* and *mandamus* to compel the Industrial Accident Commission to reopen a proceeding previously determined by it under the authority of section 20d of the Workmen's Compensation Act (Stats. 1917, p. 850), and to annul its award of a death benefit made in said proceeding in favor of Ollie Kopke, the widow of Joseph Kopke, who was drowned while in the employ of petitioner United Dredging Company, for which petitioner Ocean Accident and Guarantee Company is the insurance carier. The parties have stipulated that the petitions for review and *mandamus* should be heard, considered and decided as one proceeding.

The said award which petitioners seek to have annulled was affirmed by the District Court of Appeal upon *certiorari* on May 22, 1928. (*United Dredging Co.* v. *Industrial Acc. Com.*, 92 Cal. App. 110 [267 Pac. 763].) No petition for a hearing of said decision by this court was ever filed. On June 3, 1929, petitioners filed an application with the Commission, praying that it reopen the case and annul its award theretofore made. The Commission denied said application. It is the lawfulness of said order of denial which petitioners seek to have determined in the instant proceedings in *certiorari* and *mandamus*. Petitioners contend that the Commission and the District Court of Appeal made a mistake of law in deciding that the Workmen's Compensation Act applied to the case and that it was subject to the jurisdiction of the Commission, when as a matter of law it was within the exclusive jurisdiction of a court of admiralty, and that this error, made manifest by a decision of the United States Supreme Court (*London Guarantee & Accident Co.* v. *Industrial Acc. Com.*, 279 U. S. 109 [73 L. Ed. 632, 49 Sup. Ct. Rep 296]), rendered subsequent to the District Court of Appeal's judgment of affirmance in the instant case, constitutes "good cause," within the meaning of section 20d of the Workmen's Compensation Act, for the Commission's rescission of said award. Said section provides that for 245 weeks from the date of the injury "the Commission shall have continuing jurisdiction over all its orders, decisions and awards made and entered under the provisions of sections six to thirty-one, inclusive, of this act and may at any time, upon notice and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it upon good cause appearing therefor."

In support of their contention that the Commission has made a mistake of law which it may be compelled to correct by annulling the award, petitioners rely upon the recent decision of this court in *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 Pac. 195]. In that case, however, the correctness of the award had not been affirmed by the District Court of Appeal, as it had been in the instant case. The Commission in said Bartlett Hayward Company case computed compensation upon a twenty-five per cent disability rating in favor of a workman who had lost the sight

of one eye in an industrial accident, but was rendered sightless by said accident by reason of the fact that he had previously lost the sight of the other eye. No application was made for a rehearing by the Commission or review by the courts under sections 64–67 of the act. Over three years after the entry of the award this court held, in *Liptak* v. *Industrial Acc. Com.*, 200 Cal. 39 [251 Pac. 635], that the proper rating in such cases is one hundred per cent, or total disability. The injured workman in the Bartlett Hayward Company case thereupon filed his petition with the Commission, praying that it reopen his case and increase his award to conform with the decision in the Liptak case, citing section 20d of the Workmen's Compensation Act as conferring the power upon the Commission to make the change. The Commission granted the relief prayed for and upon *certiorari* its action was sustained by this court, the mistake of law there made being deemed "good cause" for opening the case and amending the award.

The facts of the case herein are without dispute. For a statement thereof we quote from the opinion of the District Court of Appeal affirming the Commission's award, *United Dredging Co.* v. *Industrial Acc. Com.*, *supra:*

" . . . it appeared in evidence that the deceased, who was 22 or 23 years of age, was employed as an electrical helper, deckhand and all-round man on a dredger operated by United Dredging Company, which was dredging in the navigable waters of San Francisco Bay and particularly in that part known as Richmond Inner Harbor. The dredger was operating in water varying in depth from 21 to 31 feet and was proximately seven hundred feet from the shore. The dredger was anchored and was used to suck up the bed of the bay and pump it, onto the adjacent land. From one corner of the dredger, in the direction of the shore, there ran a line of pontoons, on which lay a pipe through which the dredgings were pumped. On the day the employee met his death he had gone to work about eight o'clock in the morning and he was due to quit about 4:30 P. M. Part of the duties of the deceased were to take the men employed on the barge back and forth from the dredger to the shore. The skiff used by the deceased for this purpose was tied on the side of the first pontoon. In order to reach the skiff from the dredger, it was necessary to walk a distance of

about twelve feet along a fourteen-inch plank, which was fastened to the dredger pipe running from the dredger to the first pontoon. On the day in question Kopke was directed by one Sundeen, his immediate superior, to prepare the boat to take him and another employee to shore. Sundeen remained in the engine-room changing some of his clothes and when he arrived upon deck he discovered Kopke missing. The last seen of him alive was when he was leaving the engine-room going outside to the outer part of the dredger. At that time he was walking toward the skiff. Investigation was made and a cap was noticed floating on the water. Further search resulted in the finding of the body about midnight. It was in evidence that death was caused from drowning. On the 28th day of September, 1927, the Commission made and entered its findings and award, wherein it granted to respondent Ollie Kopke a full benefit of $4,596 against petitioners herein and specially found that the accident occurred as follows:

" 'While proceeding to get ready a skiff which, under order of a superior, he was to row ashore from the dredger upon which he was employed, he accidentally fell overboard into deep water and was drowned.' "

The District Court of Appeal in affirming the Commission's finding that the case was within the jurisdiction of the Commission, cited as authority, among other cases, *London Guarantee & Accident Co.* v. *Industrial Acc. Com.*, 203 Cal. 676 [265 Pac. 825]. In that case the decedent was employed as an apprentice navigator and seaman by a company which maintained a small fleet of fishing vessels for the accommodation of the public seeking recreation in deep sea fishing. He was drowned in the navigable waters of Santa Monica Bay when a small boat capsized in which he and other employees of the company had put off in an effort to recapture one of the company's vessels which had broken loose from its moorings in a storm. The Commission held the casualty subject to the local law and its view was sustained by this court, which stated in its opinion that the trend of modern decision is "to permit the state law to operate where the employment has no direct relation to *interstate* or *foreign* commerce or navigation," although the accident occurred on navigable waters. (Italics supplied.) Upon a writ of error to the Supreme Court of the United

States our decision in said case was reversed and the test adopted by this court in that case was declared to be based on a misconception of the law. Petitioners herein contend that the decision of the United States Supreme Court in said cause of *London Guarantee & Accident Co.* v. *Industrial Acc. Com., supra,* rendered after the District Court of Appeal had affirmed the award in the instant case, demonstrates conclusively the error in the decision of the Commission and the appellate court, and that this court should now compel the Commission to annul its award to conform to the law. The contention that error is apparent is not indisputable.

The District Court of Appeal in the instant case upheld the Commission because in its opinion the work which the deceased was doing was not so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law. The court cited *Alaska Packers' Assn.* v. *Industrial Acc. Com.,* 191 Cal. 763 [218 Pac. 561], and *Oakland* v. *Industrial Acc. Com.,* 198 Cal. 273 [244 Pac. 353], as well as the decision in the London Guarantee and Accident Company case. A relation to *interstate* or *foreign* commerce or navigation is not declared to be an essential to admiralty jurisdiction, as was erroneously held by this court in the overruled decision in *London Guarantee & Accident Co.* v. *Industrial Acc. Com., supra.* The effect of the decision of the federal Supreme Court in that case is not to repudiate the requirement of a direct relation to commerce or navigation as an essential to exclusive admiralty jurisdiction, or to cast doubt upon all decisions of this court in which that test is applied, but only to inveigh against a rule requiring that the connection be with *interstate* or *foreign* commerce or navigation.

It is interesting to note that the Supreme Court of Oregon, in *Mark* v. *Portland Gravel Co.,* 130 Or. 11 [278 Pac. 986], held that the rights and remedies of an engineer employed on a dredger engaged in scooping up sand from the bed of a navigable river for purposes of sale were to be governed by the Workmen's Compensation Act and admiralty jurisdiction did not apply. The court there cited the decision of the United States Supreme Court in *London Guarantee & Accident Company* v. *Industrial Acc. Com., supra,* but did not regard that case as requiring a decision

that the case before it was within the exclusive jurisdiction of an admiralty court.

Attempts to define the limits of admiralty jurisdiction will ever be attended with difficulty. Each case is dependent largely upon its particular facts. The facts in the instant case differ from those in *London Guarantee & Accident Co.* v. *Industrial Acc. Com., supra,* and the case herein presented remains arguable, notwithstanding the pronouncements of the United States Supreme Court in *London Guarantee & Accident Co.* v. *Industrial Acc. Com., supra.* In the Bartlett Hayward Company case, *supra,* upon which petitioners rely on the question of continuing jurisdiction, the error corrected by the Commission in the exercise of said continuing jurisdiction was pointed out in the Liptak case, in which the material facts were identical.

The instant case further differs from the Bartlett Hayward Company case in the important respect that the proceeding herein had passed beyond the Commission to the District Court of Appeal and that court had upheld the Commission's decision on the legal issue involved in the case, to wit, whether the case was one for the exclusive jurisdiction of an admiralty court. The recognition of a right in the Commission to reopen, upon petition, a case which has been affirmed by the District Court of Appeal on the theory that it had erroneously decided said case, gives rise to important questions not present in the Bartlett Hayward Company case.

We are not here considering cases where, after affirmance by the District Court of Appeal, evidence is produced showing that since the affirmance of the award the disability has either "recurred, increased, diminished or terminated." Nor are we dealing with a situation where, after an affirmance by the appellate court, new and additional evidence concerning the disability or some other material factor is brought to the attention of the Commission of such a nature as to persuade it that its original conclusion, arrived at without the aid of such evidence, is erroneous. Rather, we wish to confine the application of the remarks we here make to the situation presented by the instant case, where a decision of the Commission upon a legal point necessarily involved in the case has been sustained by the District Court of Appeal and held by said court to be the only correct

conclusion legally deducible from the evidence. In such a case, does the continuing jurisdiction of the Commission to alter its award upon "good cause" embrace the power to amend its orders based upon an incorrect view of the law previously adopted by it and in which it has been upheld by the District Court of Appeal?

We are of the view that such a power, if it exists at all, should be limited to those very exceptional cases in which deception or a want of human foresight has deprived a party of a right given by the act.

 It is generally accepted that the principles of law necessarily involved and decided by appellate courts are binding upon the lower courts in future proceedings in the same case, such as upon a new trial. (*Estate of Baird*, 193 Cal. 225 [223 Pac. 974]; *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259]; *McEwen* v. *New York Life Ins. Co.*, 187 Cal. 144 [201 Pac. 577]; *Westerfeld* v. *New York Life Ins. Co.*, 157 Cal. 339 [107 Pac. 699]; 2 Cal. Jur. 944; note, 34 L. R. A. 321.) Upon a later appeal the appellate court will not inquire into the correctness of the principles of law laid down upon the former appeal, but will only consider the record to determine if said principles have been followed. Where a decision upon appeal has been rendered by a District Court of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, this court generally will not inquire into the merits of said first decision, but will regard it as the law of the case. If the appellant was dissatisfied with the first decision of the District Court of Appeal he should have applied to this court for a hearing. (*Otten* v. *Spreckels*, 183 Cal. 252 [191 Pac. 11]; *Hill* v. *Maryland Casualty Co.*, 28 Cal. App. 422 [152 Pac. 953]; *McEwen* v. *New York Life Ins. Co.*, 187 Cal. 144 [201 Pac. 577]; note, 41 A. L. R. 1078.) While there is a modern tendency on the part of appellate cour's throughout the country not to regard this doctrine of the law of the case as one to be adhered to in all cases, but, rather, to make exceptions where the decision is manifestly unjust, the doctrine has by no means been abandoned, but is still followed as a general rule of practice and procedure. (*Johnson* v. *Cadillac Motor Car Co.*, 261 Fed. 878, 8 A. L. R. 1023, with note; *Cluff* v. *Day*, 141 N. Y. 589 [36 N. E. 182];

*Mangold* v. *Bacon*, 237 Mo. 496 [141 S. W. 650]; *Gracey* v. *City of St. Louis*, 221 Mo. 1 [119 S. W. 949]; *Chesapeake & Ohio R. Co.* v. *McKell*, 209 Fed. 514; note, 1 A. L. R. 1267.)

To permit the Industrial Accident Commission to exercise a general power to reopen a case after the award has been sustained by the District Court of Appeal and thereafter to reach a conclusion at variance with its original view and the law as stated by the District Court of Appeal, would abrogate the doctrine of the law of the case in so far as the Industrial Accident Commission is concerned. Section 20d of the act, as well as other sections, prescribe forms of procedure differing in important respects from the procedure in the trial courts. As pointed out in the Bartlett Hayward Company case, *supra,* the effect of section 20d is to render the doctrine of *res judicata* inapplicable in certain respects to causes within the jurisdiction of the Commission. But before we would judicially approve an innovation as far-reaching as to hold that the Commission may reopen proceedings in which the award has been sustained by the District Court of Appeal for the purpose of re-examining a question of law determined by that court, we would require clearer evidence of legislative intent than we find in section 20d or any other section of the act.

The orderly administration of justice, as well as the private interest of the litigants, requires that there be an end to litigation. ■ The reasons upon which the doctrine of the law of the case rests apply to proceedings before the Industrial Accident Commission.

The Workmen's Compensation Act provides that any party affected by a decision of the Commission may apply to the Supreme Court or to the District Court of Appeal "for the purpose of having the lawfulness" of the decision or award "inquired into and determined." (Sec. 67.) ■ Decisions of the appellate courts reviewing orders and decisions of inferior tribunals are intended to be followed, not disregarded. Said decisions are mandatory, not advisory. If, after the District Court of Appeal has determined an award to be lawful, the Commission may reopen the case and reach conclusions at variance with the law of the case as pronounced in the opinion of the District Court of Appeal, the decisions of said court in industrial accident cases would

be rendered impotent and unstable. The decisions of said courts are final unless taken over by this court upon hearing granted. If an aggrieved party fails to petition this court for a hearing after decision by the District Court of Appeal, he should not be permitted to secure the advantages, and subject the other party to the delays and expense, of a second appellate court review by means of petitioning the Commission to reopen the case and seeking a review of a second order of denial.

A system of procedure which would tend to encourage successive reviews by appellate courts of questions once passed upon in industrial accident cases would certainly operate to the disadvantage of employees, the class for whose protection the act was adopted, and who, as a class are much less able to bear the expense and delays incident to such a system than are their employers or their insurance carriers.

As intimated above, there may arise exceptional cases of manifest and far-reaching error where, to prevent injustice and oppression, this court would sustain the action of the Commission in reopening a case for further consideration after decision by an appellate court, but this question we need not finally decide here, for such cases will arise infrequently, and the instant case is not one.

The writs are discharged.

Shenk, J., Richards, J., Curtis, J., Preston, J., and Langdon, J., concurred.

Rehearing denied.