[No. B072005. Second Dist., Div. Six. Nov. 9, 1993.]

JERRY D. FISK, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, STATE
DEPARTMENT OF DEVELOPMENTAL SERVICES et al., Respondents.

## COUNSEL

Finestone, Schumaker, Cocquyt & Graham and David G. Schumaker for Petitioner.

Krimen, Klein, Da Silva, Daneri & Bloom and Don E. Clark for Respondents.

## OPINION

**STONE (S. J.), P. J.**—The Workers' Compensation Appeals Board (Board) upheld a determination by a workers' compensation judge (WCJ) that applicant, Jerry D. Fisk, had sustained new and further industrial disability involving his heart and vascular system but was not entitled to further medical treatment. We have concluded that the refusal to award further medical treatment was erroneous and that the Board's order denying reconsideration must be annulled insofar as it upholds the denial of further medical treatment and that further medical treatment must be awarded.

### FACTUAL AND PROCEDURAL HISTORY

Applicant, Jerry Fisk, born March 19, 1942, was employed from 1963 to 1988 as a supervising psychiatric technician at Camarillo State Hospital by the State of California's Department of Developmental Services, which was legally uninsured with claims adjusted by the State Compensation Insurance

Fund (SCIF). According to the November 8, 1988, report of the agreed medical examiner, Edward J. O'Neill, M.D., applicant had "a very strong family history of vascular disease, as well as a history of smoking, serious obesity, and hyperlipidemia."

Dr. O'Neill reported that applicant told him that "in the course of his job as a [psychiatric technician] at Camarillo State Hospital, he was exposed to the patient population and had to participate in restraining patients and as such was physically assaulted on multiple occasions." Dr. O'Neill stated that applicant noted that "[i]n the last month of his employment alone, he was involved in three separate assaults." Applicant also advised Dr. O'Neill that the staff was always short and that in recent years there had been a serious security problem. Applicant left state service in 1988 after about 25 years and took disability retirement, because applicant's angina pectoris symptoms made it impossible for him to continue to work. He filed an application for workers' compensation benefits on February 9, 1988, alleging cumulative industrial emotional stress and strain to his heart and vascular system.

In his November 8, 1988 report, Dr. O'Neill observed: "The stresses of [applicant's] occupation have been noted and represent a long[-]term moderate level influence without any specific precipitating events that have been identified." Dr. O'Neill stated that applicant "should be precluded from working in areas of excessive stress and he is limited to light work." However, Dr. O'Neill found only "a small occupational component" of applicant's disability. He further stated: "Apportionment is in order and I feel that 80% of his disability is non-occupationally related and 20% related to his occupational exposures. That is, [were] it not for his occupational exposures, he would have 80% of his present disability and would have required the same degree of care, including the coronary artery bypass surgery. In essence, I feel that he still would have had his heart disease, but it is somewhat worse because of the occupational stress." In a supplemental report on January 6, 1989, Dr. O'Neill declared that, despite the industrial component of applicant's permanent disability, "it is my opinion that he would have required the same degree of medical care with or without these occupational exposures and the medical requirements have not been significantly changed because of the [workplace] contribution." Dr. O'Neill was deposed on May 15, 1989, and reiterated that only 20 percent of applicant's disability was industrially related and that applicant should not be awarded further medical treatment although he stated that industrial stress was "in a small way" a contributing cause to the need for treatment.

After trial on March 22, 1990, WCJ Beverly Herbert issued findings and an award, finding industrial injury, temporary disability, and permanent

disability of 10½ percent *after apportionment*, but stating: "Further medical treatment is not required on an industrial basis to cure or relieve from the effects of this injury."

Applicant petitioned for reconsideration, contending that it was erroneous not to award further medical treatment because part of applicant's injury was work related and that the wrong occupational grouping had been used in computing permanent disability. The WCJ recommended granting reconsideration on the occupational grouping issue. The WCJ discussed the medical treatment issue, indicating that she had relied on Dr. O'Neill's opinion. She acknowledged that Dr. O'Neill had found an industrially related component of applicant's pathology and permanent disability, but she continued to rely on Dr. O'Neill's opinion, expressed both in his reports and deposition, that applicant would have required the same further medical care in any event and thus should not be awarded further medical treatment on an industrial basis.

The Board granted reconsideration on the occupational grouping issue, but denied reconsideration on the further medical care issue. Applicant did not petition this court for a writ of review. On September 25, 1990, based on the Board's decision, the WCJ found that applicant was 11 percent permanently disabled.

Applicant petitioned to reopen his case because of new and further disability to his heart and vascular system, however. He was again examined by Dr. O'Neill and was also examined by internist Alvin Markovitz, M.D.

On July 16, 1991, Dr. Markovitz reported that applicant was permanently totally disabled and that one-third of the permanent disability should be attributed to cumulative industrial trauma.

On November 8, 1991, Dr. Markovitz reported that he disagreed with Dr. O'Neill about the need for further medical treatment. Dr. Markovitz stated that further medical treatment "would consist of medications and [outpatient] [doctor's] visits." Dr. Markovitz was particularly skeptical of Dr. O'Neill's analysis that natural progression of applicant's heart disease would have resulted in precisely the same need for further medical treatment if applicant had not worked at Camarillo State Hospital in highly stressful employment for 25 years.[1]

Dr. Markovitz stated: "You [counsel for applicant] have pointed out to me that Dr. O'Neill states as a result of the [naturally] progressing pathology[,

---

[1]Dr. O'Neill's analysis might have been appropriate if the issue had been apportionment of permanent disability. Under the Labor Code as it is presently constituted, apportionment between an employer and employee is only permissible when the issue of permanent

applicant] would have required the same frequency and type of treatment as a result of the current industrial injury. That is simply wild; how on earth can you say that? [¶] If you feel there is any percentage, albeit 20 to 30 or 40% of the disability, . . . due to the [industrially] related condition[,] how can you say that the frequency of treatment, the degree of treatment, the amount of treatment would be exactly the same? That just does not make sense. It is even possible that absent the industrial factors, he might not have required any treatment that he did get. I mean, we are not talking about medicine here; we are talking about logic and common sense. An opinion that if you take away 20% or 30% or whatever of a disease process, . . . you will require exactly the same type of treatment to the same degree and at the same frequency just does not make common sense. This does not require a doctor to answer this absurdity."

Dr. O'Neill reported on March 25, 1992, that applicant had worked part-time for two years at the "Vista Del Mar Private Psychiatric Facility," but had had to quit because of angina pectoris symptoms. Dr. O'Neill declared that applicant was permanently totally disabled. Dr. O'Neill stated: "In terms of apportionment, it is my impression that my prior apportionment of 80% non-occupational and 20% occupational was correct[;] however, since he discontinued work, I feel that there would be a lesser contribution to the current disability from his prior occupational exposures and that there would be an increase in the non-occupational component relative to the natural progression of the disease during that time frame (1987-1992). As such, I feel that the increased disability should be apportioned 90% non-occupationally related and 10% occupationally related." He further stated that applicant's "need for medical care is secondary to the natural progression of this disease [angina]."

On May 1, 1992, the parties appeared before WCJ Danny Hullinger and stipulated that the appropriate occupational designation was group 41 for a supervising psychiatric technician. SCIF argued that applicant had waived the issue of further medical treatment by not seeking appellate review after the petition for reconsideration was previously denied.

disability is being considered. Labor Code section 4663 governs apportionment to the natural progression of preexisting disease. The method employed for apportionment pursuant to Labor Code section 4663 is described in *Franklin v. Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 242 [145 Cal.Rptr. 22]: "[T]he appeals board may apportion *the disability* under the section only in those cases in which part of *the disability* would have resulted, in the absence of the industrial injury, from the normal progress of the preexisting disease. [Citations.]" (Italics in original, internal quotation marks omitted.) Dr. O'Neill's analysis of the medical treatment issue seems to have been derived from the apportionment standard applicable to cases involving permanent disability under Labor Code section 4663.

On September 25, 1992, WCJ Hullinger granted applicant's petition to reopen and issued findings and an award, awarding further temporary disability indemnity and increasing permanent disability to 27 percent, but making no award of further medical treatment. In his opinion on decision, the WCJ noted that both Dr. O'Neill and Dr. Markovitz agreed that the applicant was now totally permanently disabled. The WCJ stated: "Based upon a review of the complete medical file, it is found that 73% of applicant's total disability is attributable to nonindustrial factors[,] resulting in a permanent disability rating of 23%." However, the WCJ awarded applicant permanent disability indemnity for a permanent disability of 27 percent. The WCJ refused to award further medical treatment and refused to award payment for medical expenses incurred by applicant since September 25, 1990, on the grounds that there was a prior finding that applicant was not entitled to further medical treatment and that no good cause was shown to reopen on the issue of further medical care.

Applicant petitioned for reconsideration on the medical care issue, arguing that where there was an industrial component of an injured worker's permanent disability, the benefit of further medical treatment was not apportionable. The WCJ recommended denial of reconsideration, relying again on Dr. O'Neill's opinion. The WCJ explained that, based on Dr. O'Neill's reports, he found that there was no good cause to reopen to award further medical treatment. The WCJ noted that Dr. O'Neill stated that applicant would have required the same extent of treatment without any occupational exposure. The Board denied reconsideration on November 4, 1992, adopting the WCJ's report. A timely, verified petition for writ of review followed. In the petition, applicant contends that neither of the WCJ's nor the Board was following the law with respect to awards of further medical treatment because medical treatment expenses may not be apportioned to nonindustrial causes. We issued a writ of review.

### DISCUSSION

Labor Code section 4600 provides in pertinent part: "Medical, surgical, . . . and hospital treatment . . . which is reasonably required to cure or relieve from the effects of the [industrial] injury shall be provided by the employer. . . ."

In *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399 [71 Cal.Rptr. 678, 445 P.2d 294], the California Supreme Court considered the case of an industrially injured worker whose preexisting nonindustrial condition contributed to his need for treatment. The Board apportioned 50

percent of the cost of medical treatment to a nonindustrial injury. ■ The *Granado* court annulled the Board's decision, stating: "There can be no doubt that medical expense is not apportionable. . . . So long as the treatment is reasonably required to cure or relieve from the effects of the industrial injury, the employer is required to provide the treatment, and *treatment for nonindustrial conditions may be required of the employer where it becomes essential in curing or relieving from the effects of the industrial injury itself.* [Citation.] Medical treatment unrelated to the industrial injury need not be furnished by the employer. [Citation.] If medical expense reasonably necessary to relieve from the industrial injury were apportionable, a workingman, who is disabled, may not be able to pay his share of the expenses and thus [may] forego treatment. Moreover, the uncertainties attendant to the determination of the proper apportionment might cause employers to refuse to pay their share until there has been a hearing and decision on the question of apportionment, and such delay in payment may compel the injured workingman to forego the prompt treatment to which he is entitled." (*Id.* at pp. 405-406, italics added.)

This has been the law since 1968. Pursuant to Labor Code section 4600 and *Granado*, when a case arises in which the injury and disability attributable to a nonindustrial condition can easily be distinguished from that attributable to an industrial cause, the employer presently is not responsible for the medical treatment of the nonindustrial condition unless treatment of that condition is necessary to cure or relieve the worker from the effects of the industrial injury. Where, despite the existence of a substantial nonindustrial contribution to the permanent disability, a component of industrial contribution also exists, the rule of *Granado* that medical care is not apportionable applies.

Recently, in *Rouseyrol v. Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1476 [286 Cal.Rptr. 250], Division Seven of this court annulled a Board order denying reconsideration of a decision that, despite industrial contribution to a worker's permanent total disability, the employer had no liability for necessary attendant care. In *Rouseyrol*, a quadriplegic had preexisting disability caused by polio and had, at the time of trial, sustained major loss of control over most of his body. The WCJ's apportionment in *Rouseyrol* deprived the quadriplegic of payment by the employer for lifetime attendant care. In *Rouseyrol*, the court relied on *Granado* in making its ruling that once some industrially related permanent disability had been established as a contributing factor to the applicant's condition, medical care could not

be apportioned.[2] (*Rouseyrol* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at pp. 1484-1485.) In *Rouseyrol*, the court also relied on *Braewood Convalescent Hospital* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 165-166 [193 Cal.Rptr. 157, 666 P.2d 14]; *Cedillo* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 454 [96 Cal.Rptr. 471, 487 P.2d 1039]; and *Buhlert Trucking* v. *Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 1530, 1532, 1534 [247 Cal.Rptr. 190]. In *Buhlert*, the employer argued that it should not have to provide all the medical treatment for an employee's industrial back injury when the employee had sustained a previous permanently disabling back injury while working for another employer in another state. The reviewing court held that, as between the worker and the California employer, medical care was not apportionable and the employer was liable for full medical treatment. (199 Cal.App.3d at p. 1536.)

█ Here, as in *Rouseyrol*, the applicant became totally permanently disabled with only a relatively small percentage of his disability attributable to industrial causes. The attempt by the WCJ's and Board to disallow medical treatment was similar to the attempt in *Rouseyrol* and did not follow the law as it is presently constituted. Pursuant to Labor Code section 4600 and *Granado* and until concrete guidelines for any apportionment of medical treatment are issued by the Supreme Court or Legislature for cases such as this, medical treatment may not be apportioned except where the line between industrial and nonindustrial disability is much more easy to distinguish than it is here and treatment for the nonindustrial condition is not essential to cure or relieve the injured worker from the effects of the industrial injury.

In the instant case, one WCJ found, based on Dr. O'Neill's analysis, that applicant did not need any further medical treatment for industrially caused disability and a second WCJ determined that, although there was good cause to reopen to award increased permanent disability indemnity because of new and further disability, there was no good cause to reopen to award further medical treatment after the date of the prior award. It is difficult to see how one could *reasonably* differentiate between the nonindustrial and the industrial components of applicant's need for treatment. All of applicant's physical problems related to his heart and vascular system and were inextricably intertwined. █ The initial finding that the employer was not liable for further medical treatment was obviously unreasonable, and the applicant should have pursued the matter to this court by seeking a writ of review.

In this case, however, applicant's failure to seek extraordinary relief from the previous order of the Board was not fatal. While the doctrines of res

---

[2]In *Rouseyrol*, the worker was theoretically 100 percent permanently disabled when he was hired. The WCJ found that his industrial injury, considered alone, caused 25 percent permanent disability. (*Rouseyrol* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at p. 1479.)

judicata, collateral estoppel, and law of the case are applicable in workers' compensation litigation (see, e.g., *United Dredging Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 705, 713-714 [284 P. 922]; *Azadigian* v. *Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 372, 379-380 [8 Cal.Rptr.2d 643]), the finding in this case that reopening was appropriate because applicant had sustained new and further disability resulting in increased permanent disability involving his heart and vascular system of necessity also effectively reopened for our consideration the issue of further medical treatment for applicant's heart and vascular system.[3]

## DISPOSITION

Respondent Workers' Compensation Appeals Board's November 4, 1992, order denying reconsideration is annulled to the extent that it upholds the denial of further medical treatment to applicant after September 25, 1990. The matter is remanded to the Workers' Compensation Appeals Board with the direction that the Board is to modify the findings and award of the workers' compensation judge made on September 25, 1992, by providing that applicant be awarded further medical treatment after September 25, 1990, for the conditions which have rendered him 100 percent permanently disabled.

Petitioner shall recover the costs he incurred in this writ proceeding.

Gilbert, J., and Yegan, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 23, 1994.

---

[3]Nothing contained in *Royster* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 412 [115 Cal.Rptr. 210] is contrary to the result we reach here. In *Royster,* reopening was sought for the sole purpose of relitigating an issue already decided, and the court held that purpose insufficient to justify reopening of the applicant's case. The *Royster* court was careful to point out that it was not deciding whether a reopening for good cause would be available if the grounds for reopening did not exist during the period within which a petition for reconsideration could have been filed. (40 Cal.App.3d at pp. 414-415.) Here the reopening was predicated on applicant's new and further disability.